UNEMPLOYMENT COMPENSATION COMMISSION OF NORTH CARO-
LINA v. JEFFERSON STANDARD LIFE INSURANCE COMPANY.

(Filed 3 May, 1939.)

1. **Taxation § 19—Term "Federal instrumentality" should be strictly construed in determining immunity from State taxation.**

    In determining immunity from taxation by the State, the term "Federal instrumentality" should be given a restricted meaning, and the tendency is to restrict its scope even more sharply, and the term does not cover a private corporation existing primarily for profit, even though it is granted certain incidental duties or privileges by the Federal Government.

2. **Same: Master and Servant § 59—**

    Mere membership of an insurance company in a Federal Home Loan Bank does not constitute the insurance company a "Federal instrumentality" so as to exempt it from unemployment compensation taxes under the State law.

3. **Master and Servant §§ 57, 58—Terms of Unemployment Compensation Act must be liberally construed to effectuate its purpose.**

    The terms "employment," "employer," "employing unit," "wages," and "remuneration" as used in the State Unemployment Compensation Act must be liberally construed to effectuate the purpose of the act to relieve the evils of unemployment, and the definition of the terms as contained in the act are controlling and are broader than the common law meaning of the terms, and the act includes in its scope relationships which might be excluded by a strict common law application of the definition of an independent contractor. N. C. Unemployment Compensation Act, secs. 19 (e), (f), (g), (m), (n).

4. **Same—Employer has burden of showing that services for remuneration are within the exemptions of the Unemployment Compensation Act.**

    Where services are rendered for remuneration, the North Carolina Unemployment Compensation Act provides that the burden is on the party for whose benefit the services are rendered to prove that they are rendered free from his control or direction over the performance of such services, that they are outside the usual course of the business for which the services are performed, and that the person performing the services is customarily engaged in an independently established trade, occupation, profession, or business, sec. 19 (6), A, B, C, and since the matters of exemption are stated conjunctively, all three elements must be shown in order that exemption from the act be secured.

5. **Same—Insurance agents and managers, in their capacity as soliciting agents, are engaged in employment within the coverage of the Unemployment Compensation Act.**

    Soliciting agents and managers, in their capacity as soliciting agents, are subject to a high degree of control by the insurance company employing them under their written contracts, and usually their services are rendered to the company in the offices of the company, and are directly related and contribute to the primary purpose for which the company

is organized, and therefore their services constitute an "employment" within the coverage of the North Carolina Unemployment Compensation Act.

**6. Master and Servant § 56: Courts § 9—**

The construction and interpretation of the North Carolina Unemployment Compensation Act is for our State courts.

**7. Constitutional Law § 6a—**

The courts must interpret a statute as it is written, the wisdom of the act being the legislative function.

**8. Statutes § 5a—**

The primary rule for the construction of a statute is to effectuate the intent of the law-making body.

**9. Constitutional Law § 4a—**

The General Assembly has the power to broaden or restrict common law concepts and definitions.

**10. Master and Servant § 59—**

Since the services of soliciting agents and managers, in their capacity as soliciting agents, constitute "employment" within the meaning of the Unemployment Compensation Act, the insurance company for which the services are performed is liable for contributions for such employment under the Unemployment Compensation Act.

SEAWELL, J., took no part in the consideration or decision of this case.

BARNHILL, J., dissenting.

SCHENCK, J., concurs in the dissenting opinion.

APPEAL by defendant Jefferson Standard Life Insurance Company from *Olive, Special Judge,* at September Term, 1938, of WAKE. Affirmed.

This is a civil action to recover alleged contributions due the unemployment compensation fund upon the commissions paid by defendant to its soliciting agents and its managers in their capacity as soliciting agents. Upon specific waiver of a jury, the judge found the facts.

To the following findings of fact there were no objections or exceptions: That defendant is a member of the Federal Home Loan Bank of Winston-Salem but has never availed itself of this source of credit, nor has it ever discharged any functions or duties of the bank or of the Government by reason of its membership in said bank; that the typical agent and the typical manager (in his capacity as soliciting agent) of defendant are under written contracts to defendant, are required to give bonds satisfactory to defendant, are subject to direction as to territory and as to duties, are required to perform such further duties as may be assigned by the defendant, are required to devote their full time, talents and energies to defendant's business, and are prohibited from soliciting insurance for any other company without defendant's written permission. From ample evidence, but over defendant's objection, the judge found:

That the soliciting agents and managers (in their capacities as soliciting agents) are required to deliver policies in accordance with defendant's instructions in its manuals furnished to them by defendant; that defendant furnishes such agents and managers account books, vouchers, and other books and papers necessary for their work and all such books, papers, etc., remain the property of defendant, subject to its inspection at any time and subject to be returned upon termination of the contract; that the soliciting agents and managers (in their capacities as agents) are governed strictly by instructions given them by defendant at the time of the making of the contract and thereafter, and are at all times held to strict compliance with the conditions of the contracts, which may be terminated by either party on ten days written notice; that defendant's agents are under the supervision and control of defendant's managers; that defendant furnishes desk space to its soliciting agents in all its offices and the agents and managers (as agents) use this space in performing part of their duties for defendant; that defendant advances money to its agents and district managers to aid them in conducting their business of soliciting for defendant; that education and recreational meetings for the agents are held by defendant and their expenses, generally, at such meetings are paid by defendant; "that the services performed by the soliciting agents and managers in their capacity as soliciting agents is a necessary and integral part of the business in which the defendant is engaged and for which it was originally chartered; and further that said agents are not customarily engaged in an independently established trade, occupation, profession or business."

Based upon the above, and other, findings of fact, the trial judge concluded, as a matter of law that the defendant was not, by reason of its membership in the Federal Loan Bank of Winston-Salem, an instrumentality of the United States such as is exempt from the provisions of the Unemployment Compensation Law; and, further, that the employment of the soliciting agents and the district managers (as soliciting agents), and the remuneration paid them, is such as to bring them under the provisions of the Unemployment Compensation Law and thus require defendant to make proper contribution for such purpose. From a judgment to this effect, defendant appealed, assigning as its principal errors the two conclusions of law indicated above.

*Adrian J. Newton, Ralph Moody, and J. C. B. Ehringhaus, Jr., for plaintiff.*

*Smith, Wharton & Hudgins for defendant.*

CLARKSON, J. Two questions are decisive of this appeal: (1) Is the membership of a North Carolina insurance corporation in the Federal

16—215

Home Loan Bank of Winston-Salem sufficient to constitute the corporation such an instrumentality of the United States as to exempt it from the provisions of the N. C. Unemployment Compensation Law? We think not. (2) Does the relationship between defendant and its soliciting agents and managers (in their capacity as soliciting agents) constitute "employment," and the compensation paid them constitute "wages" and "remuneration," as those terms are defined and used in the N. C. Compensation Law? We think so.

(1) *Home Loan Bank Member as Federal Instrumentality.* In *Capitol Building & Loan Assn. et al. v. Kansas Commission of Labor and Industry,* 148 Kansas, 446, 83 P. (2nd), 106, recently decided, a building and loan association sought exemption from a state unemployment compensation act by reason of its membership in a Federal Home Loan Bank. In a clear and logical opinion speaking to the subject, it is stated: "Tested by all the light the diligence of counsel for the litigants has supplied us, as well as by our own researches, we do not regard the plaintiffs' mere stockholder membership in the Federal Home Loan Bank of Topeka, with the privileges and duties attendant on that relationship, as sufficient to constitute them Federal instrumentalities, nor to relieve them from making contributions to the unemployment compensation fund created by the statute of 1937."

Although we recognize that, as stated in *Metcalf & Eddy v. Mitchell,* 269 U. S., 514, 522, 70 L. Ed., 384, "Just what instrumentalities of either a state or the Federal Government are exempt from taxation by the other cannot be stated in terms of universal application," we think that the conclusion in the *Capitol Building & Loan Assn. case, supra,* indicates the sound view in the instant case. We agree with the view indicated in *Clallam County v. United States,* 263 U. S., 341, 68 L. Ed., 328, that there is a very real distinction between the creation of an agency primarily and fundamentally to discharge a function of the Federal Government and the grant of incidental powers, functions or duties of the Federal Government to a private enterprise existing primarily for profit. See the opinion by *Justice Holmes, Clallam County v. United States,* 263 U. S., 341 (344). A similar distinction was recognized in *Federal Land Bank v. Priddy,* 295 U. S., 229 (233-4), where it was pointed out that, although Federal Land Banks are "Instrumentalities of the Federal Government," "joint stock land banks are privately owned corporations for profit to their stockholders through the business of making loans on farm mortgages" and "there is nothing in their organization and powers to suggest that they are governmental instrumentalities." Again, in *Federal Compress & Warehouse Co. v. McLean,* 291 U. S., 17, 78 L. Ed., 622, a private warehouse business sought to escape state taxation on the ground that it had been licensed

for the storage of agricultural products by the Federal Government; in answer to this the Court said, "It can no longer be thought that the enjoyment of a privilege conferred by either the national or a state government upon the individual, even though to promote some governmental policy, relieves him from the taxation by the other of his property or his business used or carried on in the enjoyment of the privilege or of the profits derived from it. *Susquehanna Power Co. v. Tax Commission,* 283 U. S., 291, 75 L. Ed., 1042; *Fox Film Corp. v. Doyal,* 286 U. S., 123, 76 L. Ed., 1010; *Broad River Power Co. v. Query,* 288 U. S., 178, 77 L. Ed., 685." It thus appears that the meaning of the term "Federal instrumentality" has consistently been treated as having a more precise meaning than that assigned it by defendants here, and that the term is not properly applicable to a private corporation, existing primarily for profit but granted certain incidental duties or privileges by the Federal Government. This doctrine of immunity, protecting instrumentalities of either the State or the Federal Government from interference at the hands of the other, developed by *Marshall (McCulloch v. Maryland,* 4 Wheaton, 316, 432, 436) to aid the perpetuation of the dual sovereignty established by our Constitution, is not undergoing a process of expansion. Rather, the more recent cases indicate a tendency to restrict more sharply than ever the various exemptions which arise out of the doctrine. See *Clallam County v. United States, supra; Helvering v. Gerhardt,* 304 U. S., 405, 82 L. Ed., 1427. In view of the restricted meaning which has always been given the term "Federal instrumentality," it seems doubtful whether at any time in the history of our highest Court a private insurance corporation owning stock in a Federal Home Loan Bank would have been considered a "Federal instrumentality"; certainly the possibility of such a determination today, in the light of recent cases touching upon the subject, is extremely remote. See *Helvering v. Gerhardt, supra; Clallam County v. United States, supra; Rogers v. Graves,* 299 U. S., 401. We are constrained to hold that, in this record, the defendant insurance corporation is not such a Federal instrumentality as would exempt it from the unemployment contributions here sought.

(2) *"Employment" of Agents and Managers for "Remuneration."* An examination of the pertinent definitions in the Unemployment Compensation Act makes it readily apparent that such words as "employment," "employer," "employing unit," "wages," and "remuneration," when used in the act, are not used as words of art having rigid, precise and restricted meanings, but rather, as defined by the act itself, are used as broad terms of description, evidencing a legislative intent to give to the act a broad and liberal coverage to the end that the far-reaching effects of unemployment may be alleviated. For example, " 'Employing

unit' means any individual or type of organization, including any part-
nership, association, trust, estate, joint stock company, *insurance com-*
*pany, or corporation, whether domestic or foreign."* (Section 19e);
" 'Employer' means (1) any employing unit which in each of twenty
different weeks within either the current or the preceding calendar year
(whether or not such weeks are or were consecutive) has or had in
employment, eight or more individuals (not necessarily simultaneously
and irrespective of whether the same individuals are or were employed
in each such week;" (Section 19f.1); " 'Employment' means service,
including service in interstate commerce, performed for remuneration or
under any contract of hire, written or oral, express or implied" (Section
19g.1); " 'Wages' means all remuneration payable by employers for
employment" (Section 19m); " *'Remuneration' means all compensation*
*payable for personal services including commissions and bonuses and*
*the cash value of all compensation payable in any medium other than*
*cash."* (Section 19n.) Insurance companies such as defendant are
expressly included under the term "employing unit." Since it is an
employing unit having more than eight soliciting agents and district
managers, defendant is an "employer" under Section 19f.1, if the rela-
tion of these agents and managers to the defendant constitute "employ-
ment." Soliciting agents and district managers (as soliciting agents),
each under individual contract with defendant, to solicit and write in-
surance and perform other services for defendant, perform such services
in return for commissions. Accordingly, if commissions constitute "re-
muneration," as defined by Section 19n, the relationship of the soliciting
agents and managers (as soliciting agents) to defendant is "employ-
ment" within the definitions of the Unemployment Compensation Act.
Since "remuneration" includes "all compensation payable for personal
services including commissions and bonuses" (Section 19n), the rela-
tionship of the soliciting agents and the district managers (as soliciting
agents), by the definitions of the Unemployment Compensation Act, is
clearly brought within the terms "employment." Accordingly, defendant
is an "employing unit" as to these agents and managers and is their
"employer" and, within the terms of this act, such agents and managers
are within the "employment" of defendant.

    This conclusion is further reinforced by the act. Section 19 (6), A,
B, and C, provides that where "services" (in the present case, soliciting
insurance) are performed for "remuneration" (in this case, commis-
sions), such services are "deemed to be employment subject to this act
unless and until it is shown to the satisfaction of the commission that:
(A) Such individual has been and will continue to be free from control
or direction over the performance of such services, both under his con-
tract of service and in fact; and (B) such service is either outside the

usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (C) such individual is customarily engaged in an independently established trade, occupation, profession, or business." The burden of showing these matters of exemption is placed by the statute on the defendant, and, since they are stated conjunctively and not disjunctively, all three of these elements must be shown in order that exemption from the act be secured. Without entering here upon an elaborate analysis of the application of this rule to the instant case, it is significant (a) that the soliciting agents and managers (as soliciting agents) were subject to a high degree of control by the defendant by reason of their written contracts, (b) that their services were rendered in the manner usual and customary for such services were generally performed in the offices of defendant, and (c) that such services were directly related to, and contributed to, the primary purpose for which defendant was organized. Further, the Commission decided that the exemption did not exist here, and the extent to which this Court may review the determinations of the Commission is, at least, open to doubt. See *Unemployment Compensation Commission v. Kirby,* 212 N. C., 763.

In passing upon a similar Unemployment Compensation Act as it applied to soliciting and district agents of an insurance company, the Colorado Supreme Court, since the argument of this cause, filed an opinion on 14 February, 1939, in accord with the view here expressed to the effect that the agents of the company are covered by the act. It is there said (*Industrial Commission of the State of Colorado v. Northwestern Mutual Life Insurance Company*), "Even if the test of coverage in this case is a technical relationship of master and servant, notwithstanding the legislative tests of 'employment' . . . of the statute, the company's agents are servants within the relationship and not independent contractors. Since it is our opinion that the activities of the company's agents are within the legislative definition of 'employment,' . . . it is unnecessary for us to make a determination of the master and servant issue." The Connecticut Supreme Court, at the December Term, 1938, in *Northwestern Mutual Life Insurance Company v. Joseph M. Tone et al.,* reached a contrary decision (*Maltbie, C. J.,* writing the opinion), but the act there construed places a greater emphasis than does ours upon the common law concepts involved of master and servant, principal and agent.

Likewise, the case of *The Texas Company v. Leon L. Wheeless et al.,* decided recently (but not yet reported) by the Supreme Court of Mississippi, is clearly distinguishable from the instant case; there the status of retail oil and gas distributors under independent contracts was in-

volved, a status much more clearly that of independent contractor than is the case with the insurance agents here discussed.

It is not surprising that a wide disparity of views is appearing, since not only are the different cases raising the question argued upon a number of different theories, but there are numerous variations apparent in the respective state unemployment compensation acts. Such variations in the state laws and the interpretations given them are but reflections of the considerable latitude necessarily allowed the individual states to the end that they may work out compensation acts suited to their own peculiar needs. In the words of the late *Justice Cardozo,* speaking to this point in *Steward Machine Company v. Davis,* 301 U. S., 548 (593-4), 81 L. Ed., 1279: "A wide range of judgment is given to the several states as to the particular type of statute to be spread upon their books. . . . What they may not do, if they would earn the credits, is to depart from those standards which in the judgment of Congress are to be ranked as fundamental. Even if opinion may differ as to the fundamental quality of one or more of the conditions, the definer will not avail to vitiate the statute." Accordingly, it would appear settled that the matter here involved is one of state law, to be interpreted finally by this Court.

The scope and purpose of the present act are exceptional in breadth. The draftsmanship of the definition section, which gives flesh and sinew to the whole, shows a carefully considered and deliberate purpose to leap many legal barriers which would halt less ambitious enactments. As far as language will permit it, the act evinces a studied effort to sweep beyond and to include, by redefinition, many individuals who would have been otherwise excluded from the benefits of the act by the former concepts of master and servant and principal and agent as recognized at common law. In the words of the late *Justice Holmes,* in *Johnson v. U. S.,* 163 Fed., 30 (32), (C. C. A., 1st): "The legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed. The major premises of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for the courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before." This is quoted with approval in *Keifer and Keifer v. Reconstruction Finance Corporation et al.,* decided by the United States Supreme Court, 27 February, 1939. It is our task to interpret the law, as it is written, fairly and accurately. "Whether wisdom or unwisdom resides in the scheme . . . it is not for us to say." *Helvering v. Davis,* 301 U. S., 619 (644), 81 L. Ed., 1307.

"The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. . . . The courts have no function of legislation and simply seek to ascertain the will of the legislature." *United States v. Goldenburg,* 168 U. S., 95, 102-3, 42 L. Ed., 394. The General Assembly, in the instant act, in order to discharge more precisely its legislative function, assumed the role of definer. This is not unusual. *Fox v. Standard Oil Co.,* 294 U. S., 87; *Steinberg v. U. S.,* 14 Fed. (2nd), 564; *Spano v. Fruit Growers, Inc.,* 83 Fed. (2nd), 150; also see *Supply Co. v. Maxwell,* 212 N. C., 624, 626, where it was said: "The act contains its own glossary or definition of terms." The clear and unequivocal meanings of those definitions are strongly indicative of the legislative intent as to the detailed applications of the act, and in them the legislative intent to disregard a number of the neat categories of the common law is apparent. "The heart of a statute is the intention of the law-making body. *Trust Co. v. Hood, Comr.,* 206 N. C., 268, 173 S. E., 601." *Supply Co. v. Maxwell, supra* (627); *Belk Bros. v. Maxwell, ante,* 10.

The power of the General Assembly to broaden or restrict common law concepts is widely recognized (*N. Y. Central Railroad v. White,* 243 U. S., 300, 61 L. Ed., 667; *McDermott v. State of Washington,* 82 P. 2nd, 568) and is not here challenged. Although the extent of the area encompassed by some of the definitions may cause surprise, the duty of this Court is to expound and to interpret the law as it is given to us, not to redraft it along lines which may seem to us more conservative and more desirable. The economic and social evil of unemployment in its broad sweep frequently disregards man-made geographic and political boundaries; perhaps, it follows that former boundaries must be surrendered in seeking a remedy for such an evil. If new social evils produce, as counter-forces, new ideas of control of these evils, and such ideas are brought to us from the legislative forum, we must guard against falling victims to that suspicion which is born of the mere novelty of things.

Upon a careful examination of the record in this case and the act itself, giving due consideration to the meanings assigned by the General Assembly to the "key words" of the act, we are constrained to hold that defendant's soliciting agents and district managers (in their capacities as soliciting agents) are in the "employment" of defendant, as the same is used in the N. C. Unemployment Compensation Act. Accordingly, defendant is liable for the contributions here sought.

The judgment of the court below is

Affirmed.

SEAWELL, J., took no part in the consideration or decision of this case.

BARNHILL, J., dissenting: The majority opinion herein holds that, within the purview of our Unemployment Compensation Act, soliciting agents of an insurance company are employees of such company. With this view I cannot agree.

The decision herein turns upon the meaning of certain key-words such as "employer," "employment," and "wages." All of these words have precise and definitive meanings as they have come to be accepted at common law. They relate essentially to the law of master and servant and their use necessarily implies the existence of the master and servant relationship. The status of an independent, soliciting agent, acting under and by virtue of a written contract with an insurance company, is that of an independent contractor rather than that of a servant. As an individual he agrees to engage in the solicitation of insurance, upon a commission basis. He is the judge of the method, the manner, the time, and the extent of particular solicitations. If he at times uses the company's offices as a convenience, this is not essential to efficient salesmanship of insurance. If he uses certain books, forms, and blanks furnished by the company, this, too, is but in the interest of convenience; it does not affect the essential status of the insurance solicitor. He may, and often does, with the consent of the insurance company, engage in some other business or vocation, thus devoting only part of his time to the writing of insurance. Such control as is exercised over him by the company is not direct, but only such general supervision as is required by the company in determining the quality and quantity of the insurance which it accepts for coverage. In my opinion, that detailed supervision and direct control which is essential to the master-servant relationship is lacking here.

Section 19g, 6, A, B, and C, indicate three tests to be employed in determining whether or not the necessary relationship of employer-employee exists. These tests are: (A) Freedom from control or direction in the performance of the services, (B) performance of services outside of all the places of business of the enterprise, and (C) customary activity in an independently established trade, occupation, profession, or business. In my opinion, a soliciting agent meets all of these tests: He is free from direct control and direction in soliciting insurance; he may, and often does, perform all of the necessary services of his relationship outside the offices of the insurance company; and, he may, consistent with his contract relationship, engage in an independent calling or vocation. These "tests" are standard ones which have long been recognized as valuable in determining whether the status of an individual is that of servant or of an independent contractor. Restatement of the Law of Agency, s. 220. The able draftsmen of the Restatement of Agency— each an authority on the subject in his own right—make this very perti-

nent observation, "The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in accomplishing results. *Those rendering service but retaining control over the manner of doing it are not servants.* They may be agents, agreeing only to use care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal; or they may be persons employed to accomplish or to use care to accomplish physical results, without fiduciary obligations, as where a contractor is paid to build a house. *An agent who is not subject to control as to the manner in which he performs the acts that constitute the execution of his agency is in a similar relation to the principal as to such conduct as one who agrees only to accomplish mere physical results. For the purpose of determining liability, they are both 'independent contractors' . . ."* Restatement of the Law—Agency, "Independent Contractors," p. 485.

The essential difference between a servant and an independent contractor is the degree of control or right of control exercised with respect to the individual's physical conduct in the performance of services. This control of the physical conduct of the individual is present in the case of a servant, but lacking in the case of an independent contractor. *Creswell v. Publishing Co.,* 204 N. C., 380, 168 S. E., 408; *Texas Co. v. Mills,* 171 Miss., 231, 243, 156 So., 866, 869; *Carter Publications, Inc., v. Davis* (Tex. Civil App.), 68 S. W. (2nd), 640, 644; *Washington News Co. v. Satti,* 169 Md., 489, 492, 182 Atl., 286, 287; *Keller v. Equitable Life Assur. Soc.,* 246 App. Div., 565, 282 N. Y. Supp., 841 (judgment affirmed in 271 N. Y., 511, 2 N. E. 2nd, 670).

In the case of an insurance agent, in my opinion, that necessary degree of control over the physical conduct of the agent is lacking to constitute him a servant. In effect the insurance company gives him a rate book and general instructions as to the manner of preparing and filing applications, but thereafter relies almost entirely upon the desire of the agent for commissions as a sufficient motivating force to keep the agent alert to new prospects. To resort to the crisp but descriptive vernacular of the streets, he is "put on his own" and told to "go to it," and the company "pays off" on the basis of results produced. The only provision in the contract in respect to the amount of business the agent is required to produce stipulates that the company may at its option consider the failure of the agent to send in a completed examined application in any consecutive period of three months as a termination of the contract *unless* the agent was disabled during said period.

The individual's initiative counts high in such a calling and matters of sales psychology and technique are left to his individual choice. This

is scarcely a description of a "servant," as defined at law; rather, it seems to me that such an agent is an excellent example of an "independent contractor."

The objective of the Unemployment Compensation Act is commendable and the definitions therein contained are broad and comprehensive. And yet I do not consider that the Legislature intended, or that the definitions are sufficiently broad, to include insurance soliciting agents. The provisions of our insurance law indicate that the State treats the occupation of soliciting insurance as a business independent of the company the agent may represent. The Insurance Commissioner, rather than the company, determines the qualifications and moral character of the agent. C. S., 6299. The agent is required to obtain a license, which license is issued to him as a person authorized to solicit insurance, rather than to the company. C. S., 6298. He may be discharged by the Insurance Commissioner through a revocation of his license. C. S., 6300. When the soliciting agent represents a company which is not licensed to do business in this State he is personally liable on any contract of insurance he may make. C. S., 6303. He must carry with him and exhibit on demand his personal license, notwithstanding the fact the company he represents is licensed to do business in the State, and a failure to do so is a misdemeanor. C. S., 6306. As between the Insurance Company and the applicant for life insurance the soliciting agent is deemed to be the agent of the company and not of the insured. C. S., 6457. This latter provision seems to me to be particularly pertinent. If the agent occupies the position of an employee rather than that of an independent contractor he would be, as a matter of law, the representative of the company. It is evident that the Legislature did not so consider him. On the other hand, in this section and throughout the insurance law, the business of soliciting insurance is treated as an independent calling and the soliciting agent as an independent contractor or person engaged in a business separate and apart from the insurance business, as such.

The provisions for the payment of unemployment compensation is a national plan. Provision is made for crediting employers paying the Federal Social Security tax with 90 per cent of the amount paid to the State to cover unemployed eligible under the Federal Act. The Commissioner of Internal Revenue has ruled that soliciting agents are not within the Federal Act. In 29 states and in the District of Columbia they are excluded either by statutory or judicial declaration. In five states in which it has been held that local soliciting agents are included, the rulings were not made by the Court of last resort. As the plan is national in scope and contemplates a coöperative legislative effort by state and national governments for carrying out a public purpose com-

mon to both, which neither could fully achieve without the coöperation of the other, the judicial interpretations of the act should be uniform unless there is a compelling reason to the contrary. *Ins. Co. v. Tone* (Conn.), Dec. Term, 1938. I can see no such reason why we should depart from the generally accepted view of the proper scope of the Social Security Act. On the contrary, I am convinced that a local soliciting agent is not embraced within the terms of the legislation.

As to the contention of defendant that it is an instrumentality of the Federal Government, I concur in the majority view that this position is not sound and cannot be sustained. The defendant is a North Carolina corporation exercising the powers conferred by its charter. If it has the authority to exercise the privileges incident to membership in the Home Owner's Loan Corporation it is by virtue of the terms of its certificate of incorporation. Such privileges may be withdrawn by the Federal Government, but this does not destroy its corporate entity. The exercise thereof is merely incident to the corporate existence, dependent upon compliance with the requirements of the Home Owner's Loan Corporation. In respect to this aspect of the case the ruling of the Commissioner of Internal Revenue is not supported by reason or logic, and we cannot accept his opinion or follow his conclusion.

SCHENCK, J., concurs in this opinion.