CREAMERIES OF AMERICA, Inc., v. INDUSTRIAL COMMISSION et al.

No. 6093.   Decided May 4, 1940.   (102 P. 2d 300.)

*Jesse R. S. Budge,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., *S. D. Huffaker,* Asst. Atty. Gen., and *A. N. Ferro* and *F. F. Dremann,* Sp. Counsel, both of Salt Lake City, for defendants.

McDONOUGH, Justice.

This is an original proceeding by Creameries of America, Inc., to review defendant Commission's confirmation of an appeal tribunal's finding that defendant Foss is entitled to unemployment benefits under the Unemployment Compen-

sation Act (Chapter 1, Laws Utah 1936, Special Session, as amended by Chapter 43, Laws of Utah 1937).

Plaintiff is engaged in the manufacture, processing, and sale of milk and milk products. In May 1938 it entered into a contract called a "Franchise Agreement" with defendant Foss, denominated "dealer" therein, under which it granted to him the exclusive right to sell its products at retail in a defined franchise area in Salt Lake City. Under its provisions the Company agreed to sell such products to Foss at a price fixed at a discount from "the retail price posted on the Company's bulletin board" or if no price be posted then "a reasonable price shall be used, as determined by the Company for similar products in the same neighborhood." The company by a provision of the contract loaned to the dealer a list of names, addresses and requirements of the persons who at the date of the contract were purchasing its products at retail within the franchise area. The company reserved to itself the good will of the retail trade within the area, a provision being made by the agreement for the "purchase" from the dealer, upon the termination of the contract, of any customers or business acquired by the latter during the life of the contract after deducting any loss thereof suffered during such period. The contract term was for one year and "thereafter from year to year, unless otherwise cancelled or terminated." The agreement was terminable by either party upon giving the other two weeks' written notice.

The dealer agreed not to handle products other than those of the company, within the area, and not to handle any such products therein, or in any wise deal with the customers relative to sale of such products, for a period of two years after termination of the contract. Upon the dealer's failure to carry out any of the provisions of the contract, the company reserved the right to terminate the agreement upon twenty-four hours' written notice thereof.

The agreement was not assignable without the written consent of the company. It provided that it should not be construed to create any co-partnership between the parties,

nor the relationship of principal and agent, or employer and employee or any relationship other than buyer and seller. Other provisions of the agreement will be referred to in the opinion where deemed necessary.

The briefs herein were filed prior to our decision in the case of *Globe Grain and Milling Co.* v. *Industrial Commission*, 98 Utah 36, 91 P. 2d 512, rehearing denied, 98 Utah 48, 97 P. 2d 582, in which we held that the Act did not restrict the benefits thereof to those coming strictly within the common law concepts of servants or employees. For that reason, perhaps, plaintiff's brief is devoted wholly to the question of whether the findings and the evidence in support thereof are sufficient to support a decision that Foss was an employee. However, plaintiff's statement of errors relied on, raises two questions: (1) Whether the applicant Foss performed "services for wages" for plaintiff within the meaning of Section 19(j) (1) of the Act; and (2) whether, if Foss did perform "services for wages," he nevertheless came within the provisions of subdivisions (a), (b), and (c) of Section 19(j) (5), and is therefore not entitled to benefits under the Act.

Subsection (j) of Section 19 of the Unemployment Act sets out what constitutes employment under the Act. Part (1) of Subsection (j) defines the term "employment" as follows:

" 'Employment' subject to the other provisions of this subsection, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied."

Subdivision (5) of subsection (j) provides, that,

"Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that—

"(a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(b) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(c) such individual is customarily engaged in an independently established trade, occupation, profession or business."

From the above provisions it seems clear to us that the legislature has endeavored to define by the Act itself a classification of individuals entitled to employment benefits. Hence, the statutory definition, rather than any common law concepts, if differing therefrom, govern—insofar as they are applicable. The fact that neither the term "employee" nor the term "independent contractor" is used anywhere in the Unemployment Compensation Act is itself indicative that the legislature did not intend to use the relationships of "independent contractor" or "employer-employee," as defined by the common law, as the criteria to determine who are entitled to benefits under the Unemployment Compensation Act. The word "individual" is used throughout the Act to refer to the person seeking unemployment benefits. While the terms "employer" and "employing unit" are used, they are specifically defined by the Act so that they have a distinct meaning which may or may not coincide with the ordinary conception of "employer." Where words are defined in a particular statute, and it is clear that the legislature intended to give to such words a different meaning than the one generally and ordinarily given to such words, the statutory definition is the one to be applied. *Fox* v. *Standard Oil Co.*, 294 U. S. 87, 55 S. Ct. 333, 79 L. Ed. 780 (where the word "store" was given a special meaning under the state statute so as to include service stations) ; *Comer* v. *State Tax Commission*, 41 N. M. 403, 69 P. 2d 936 (where the word "agent" was given a special meaning different from ordinary usage) ; *Levitt* v. *Faber,* 20 Cal. App. Supp. 2d 758, 64 P. 2d 498 (where the court held that the words "labor" and "personal service" had a special meaning as used in the particular statute).

That "Section 19(j) (5) signifies a relationship entitled to benefits of the act beyond that of a mere master and servant relationship" as stated in our opinion in *Globe Grain & Milling Co.* v. *Industrial Commission,* supra [91 P. 2d 514], is borne out by the fact that at the 1939 session of the state legislature amendments were offered in the Senate to so modify the definitions of Section 19 as to confine the benefits of the Act to a strict master and servant relationship.[1] Such amendments were rejected.

---

[1] Excerpt taken from the Senate Journal (1939) Day 52, p. 501:

"Senator Macfarlane moved to amend the bill as follows:

"Page 28, line 16, following subdivision (6) insert subdivision as follows:

" '(7)   Any employing unit which has in its employment under such conditions as to amount to a relationship of master and servant and not that of independent contractor of four or more individuals, irrespective of whether the same individuals are or were employed in each such day.'

"Page 28, line 28, following subdivision (2) (b) insert subdivision (c) as follows:

" '(c)   The employment is not performed under a contract which creates a relationship of independent contractor or does not amount to a relationship of master and servant.'

"Page 29, line 10, strike all of Section 5 and subdivisions (a), (b) and (c), ending on line 22, page 29, and insert in lieu thereof the following:

" '(5)   Services performed by an individual for wages shall be deemed to be employment subject to this act when it is shown that the services were performed under such conditions as amount to a relationship of master and servant and not that of independent contractor.'

"Page 30, line 17, insert new subsection (i) as follows:

" '(i)   Services performed under a contract which does not create the relationship of master and servant or which are performed under a contract or condition which give rise to a relationship of one doing the services of an independent contractor or services performed under a special contract under such conditions that the person performing the work performs it as an independent contractor.'

"Page 31, line 13, after the word 'payable' insert 'to an employee and not to an independent contractor.' "

Plaintiff company cites the recent case of *Washington Recorder Pub. Co.* v. *Ernst,* 199 Wash. 176, 91 P. 2d 718, 124 A. L. R. 667, in support of its contention that what was intended by the legislature in passing the Unemployment Act was to apply the common law concepts of "employee" and "independent contractor" in determining who were eligible for benefits thereunder. Under such a construction of the statute the case of *Mountain Meadow Creameries* v. *Industrial Accident Commission,* 25 Cal. App. 2d 123, 76 P. 2d 724 (cited by plaintiff in its brief), might be persuasive that the applicant in the instant case is not entitled to unemployment compensation benefits as not being an "employee." In that case, which arose under the California workmen's compensation statute, the court held that a contract similar to the one involved in the instant case, created a relationship of "independent contractor" rather than "employee." However, see the cases of *Beatrice Creamery Co.* v. *State Industrial Commission,* 174 Okl. 101, 49 P. 2d 1094; and *Spears Dairy* v. *Bohrer,* Tex. Civ. App., 54 S. W. 2d 872, where the operator of a milk truck who delivered milk on a commission basis—somewhat similar to the facts in the instant case—was held to be an "employee."

In view of what has heretofore been said with respect to the evident purposes and intent of our Unemployment Compensation Act, we are not constrained to follow the Washington court in its interpretation of the Washington Unemployment Compensation Act. The Ernst case, decided by Department of the Washington Supreme Court, is not in harmony with the previous case of *McDermott* v. *State,* 196 Wash. 261, 82 P. 2d 568, decided by Department 1 of such court. In the McDermott case the court stated that in passing the Unemployment Compensation Act the legislature defined "employment" to cover more than the relationship of master and servant as viewed by the common law. Although only a few cases have been decided in other states under similar statutes, yet the various courts seem to have adopted a view of their particular Act similar to

that announced in the McDermott case. *Industrial Commission* v. *Northwestern Mutual Life Ins. Co.*, 103 Colo, 550, 88 P. 2d 560 (holding agents for Life Insurance Company to be entitled to benefits under the Act) ; *Unemployment Compensation Commission of North Carolina* v. *Jefferson Standard Life Ins. Co.*, 215 N. C. 479, 2 S. E. 2d 584; *Unemployment Compensation Commission* v. *City Ice & Coal Co.*, 216 N. C. 6, 3 N. E. 2d 290. Cases which have seemingly adopted a contrary view—in accord with *Washington Recorder Publishing Co.* v. *Ernst*, supra,—are *Texas Co.* v. *Wheeless*, 185 Miss. 799, 187 So. 880; *Northwestern Mutual Life Ins. Co.* v. *Tone*, 125 Conn. 183, 4 A. 2d 640, 121 A. L. R. 993. However, as pointed out in *Globe Grain & Milling Co.* v. *Industrial Comm.*, supra, in *Northwestern Life Ins. Co.* v. *Tone*, supra, the statute construed defined employment as "any service   *   *   *   under any express or implied contract of hire *creating the relationship of master and servant.*" (Italics added.) In *Texas Co.* v. *Wheeless*, supra, the court construed a statute of which the provisions of subsections (j) (5) (a), (b), and (c) are not a part. See Chapter 172A, 1938 Supplement of the Mississippi Code, 1930, annotated.

In *Unemployment Compensation Commission* v. *Jefferson Standard Life Ins. Co.*, supra, the court said [215 N. C. 479, 2 S. E. 2d 587] :

"An examination of the pertinent definitions in the Unemployment Compensation Act make it readily apparent that such words as 'employment,' 'employer,' 'employing unit,' 'wages,' and 'remuneration,' when used in the Act, are not used as words of art having rigid, precise and restricted meanings, but rather, as defined by the Act itself, are used as broad terms of description, evidencing a legislative intent to give to the Act a broad and liberal coverage to the end that the far-reaching effects of unemployment may be alleviated."

And again:

"The power of the General Assembly to broaden or restrict common law concepts is widely recognized (*New York Central Railroad Co.* v. *White*, 243 U. S. 188, 37 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D,

1, Ann. Cas. 1917D, 629; *McDermott* v. *State of Washington* [196 Wash. 261], 82 P. 2d 568) and is not here challenged. Although the extent of the area encompassed by some of the definitions may cause surprise, the duty of this Court is to expound and to interpret the law as it is given to us, not to re-draft it along lines which may seem to us more conservative and more desirable."

We adhere to our previous decision to the effect that whether applicant Foss is entitled to unemployment benefits must be determined from the tests laid down in the Unemployment Compensation Act, rather than from any common law concepts of master and servant. The first question to be determined, as hereinbefore stated, is whether the applicant "performed services for wages" for the plaintiff.

Section 19 (p) defines "wages" as "all remuneration payable for personal services, including commission and bonuses and the cash value of all remuneration payable in any medium other than cash." The terms "services" and "personal service" used in defining "wages" are not specifically defined in the Act. In ordinary usage the term "services" has a rather broad and general meaning. It includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed. The general definition of "service" as given in Webster's New International Dictionary is "performance of labor for the benefit of another;" "Act or instance of helping, or benefiting." The term "personal service" indicates that the "act" done for the benefit of another is done *personally* by a particular individual.

Where under Workmen's Compensation Acts the term "service" was used in defining an employee the courts have held that the word implies a submission to the will of another as to direction and control (*Mississippi Theatres Corp.* v. *Hattiesburg Local Union*, 174 Miss. 439, 164 So. 887) ; or indicates a master-servant relationship. *Rutherford* v. *Tobin Quarries*, 336 Mo. 1171, 82 S. W. 2d 918. But in all

cases the intention of the legislature as to the meaning of the term in the particular act governs. *Rutherford* v. *Tobin Quarries,* supra. And in some acts both "employee" and "independent contractor" are defined in terms of service. Under the California Act an independent contractor is defined as one "who renders *service,* other than manual labor, for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." St. 1917, p. 831, § 8(b). (Italics added.) See *Fidelity & Casualty Co.* v. *Industrial Accident Comm.,* 191 Cal. 404, 216 P. 578, 43 A. L. R. 1304.

It is the contention of plaintiff that before the Commission, or this court, should be concerned with the provisions of subsection (j) (5) (a), (b), and (c), supra, it should be determined whether services have been performed for wages and that in making such determination the word "services" should be given the meaning assigned it in *Mississippi Theatres Corp.* v. *Hattiesburg Local Union,* supra. Should it appear that such "services" were not performed no further inquiry is necessary or indeed, permissible.

Were we to adopt such meaning of "services" what meaning is to be given to (j) (5) (b), and (c)? By subdivisions (j) (5) (a), (b), and (c) services shall be deemed employment subject to the Act unless and until it is shown to the satisfaction of the Commission not only that the individual claiming benefits "has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact," (j) (5) (a), but, also, that the requirements of subdivisions (b) and (c) likewise exist. Should it appear to the Commission, after all the evidence concerning the relationship under examination has been adduced, that the individual seeking unemployment benefits was not subject to the control of the employing unit as to the means and manner of performing the work, but it also clearly appears that the work was within the usual course of business and was done

at the place of business of the enterprise for which the work was performed, is the evidence relative to the latter to be disregarded? On the other hand, shall it be determined that the work was done under the supervision and control of the employing unit as to the manner and means of its execution, what purpose would be served in weighing the evidence relative to the requirements of subdivisions (b) and (c)?

It is to be noted that Section 19 of the Act, of which (j) (5) (a), (b), and (c) are subsections, deals with and is entitled "definitions." But should we regard it rather as outlining procedure and assume plaintiff's contention as to the meaning of "services" to be correct, the applicant being required to produce evidence showing that he performed "services" under the supervision and control of the employing unit, the same difficulty presents itself. Assume that the applicant produced such evidence. Then such service is deemed to be in "employment subject to the act." But assume, further, that the evidence adduced by those opposing his application shows to the satisfaction of the Commission that he is not subject to such control and direction "either under his contract of hire or in fact." Are his services still "deemed to be employment subject to the act?" The statute says they are. But he is not shown to have performed services for wages under plaintiff's contention, hence he is not in "employment." Likewise, according to plaintiff's contention, should the evidence adduced on behalf of the applicant fail to show that he was subject to the supervision and control of the employing unit, then applicant has failed, though it might appear from such evidence that the doing of the work and the circumstances attending its performance did not meet the conditions specified in subdivisions (b) and (c).

Viewed from either standpoint, it appears that subsection (j) (5) must, if plaintiff's definition of services be accepted, be either ignored or be adverted to as criteria for

determining the existence of the master-servant relationship as in the case of *Washington Recorder Publishing Co.* v. *Ernst,* supra. As hereinbefore stated, we do not believe this latter case should be followed. To do so, we are convinced would be to nullify the expressed legislative intent. The trier of the fact is not by (j) (5) authorized to weigh the elements set out in such subsection "among others" in determining whether one who performed services for another is entitled to compensation, with discretion to find one element outweighs the other in reaching its conclusion, or that the absence of one is not controlling. Section 19(j) (5) states that "services performed by an individual for wages shall be deemed to be employment unless and until" such trier of the fact is satisfied that all three of the conditions enumerated thereunder exist.

"Services" then must be given the broader meaning hereinabove adverted to. No indication is given in the Act that the legislature intended to give a restricted meaning to such term. On the contrary the way in which "services" or "personal services" appears in our Unemployment Compensation Act indicates an intention on the part of the legislature to use the term in its broad general sense. If such personal services are found to have been performed for the employing unit, then such service is to be deemed employment subject to the Act. But if the facts required by subdivisions (a), (b) and (c) of subsection (j) (5) are shown to the satisfaction of the commission, the service of the individual is not within the terms of the Act; otherwise it is. We turn now to a consideration of the evidence in this case.

It is clear that Foss was performing services for the plaintiff. Although by his contract Foss was supposedly "buying" dairy products from plaintiff and "reselling" to certain customers, still the purchasers of the dairy products were customers of the company and not of the distributor. The customers were receiving plaintiff's products through the "distributor." The plaintiff

never relinquished its right to those customers, and at the termination of a contract with a distributor the company had a right not only to a list of all old customers so that it could continue to supply its products to them through some other distributor, it also had the right to purchase for one dollar each the names of any new customers obtained by the distributor during his contract with the company. The dealer could acquire no customers for himself; though he was entitled to remuneration for any he might acquire for the employing unit. Certainly the distribution or "reselling" of plaintiff's dairy products to plaintiff's customers was performing "services" for plaintiff within the meaning of the Act.

That the income received by Foss from the distribution of products for plaintiff comes within the definition of "wages" is also evident. All remuneration payable for personal services is "wages." We have just concluded that Foss performed "services" for plaintiff which "services" were performed by him personally. The remuneration, therefore, which he received for those "services" constituted wages. This remuneration was the difference between what Foss had to pay the company for the products and what he was permitted to charge for such products. He was required to pay plaintiff a fixed price for products and the appeal tribunal might reasonably find from the evidence that as a matter of fact the retail sale price was fixed by plaintiff. The difference between those prices constituted his "commission."

Having determined that Foss performed personal services for wages for plaintiff company, we must conclude that he is entitled to receive unemployment benefits unless the evidence shows the concurrent existence of (a), (b), and (c) of Section 19(j) (5) of the Act, set out above. With respect to the existence of (a) of subsection (5), the appeal examiner found that "the facts in this case clearly show that direction and control was exercised by the company over the manner and means in which services were per-

formed by this claimant." With respect to (c) it was further found that "claimant was not engaged in an independently established trade, occupation, profession, or business."

We cannot say that the evidence was such as to require us to say that the Commission must reasonably have found the contrary as to both factors. An examination of the record discloses the existence of the following facts as supporting the finding that direction and control was exercised by the company over the claimant: The claimant was required to purchase a truck which met the approval of the company, which truck had to be painted in a certain manner and bear the company's name thereon. Claimant was required, it might reasonably have been found, to sell the company's products at a certain price, including certain "specials" which were "pushed" by the company occasionally. The prices paid by claimant for both "specials" and regular products were fixed by the company, such prices having a direct relationship to the price for which such products could be sold. Claimant was required to keep his truck at the company garage, and repairs were made thereon by the company and charged to claimant without his knowledge or consent. Books of account were supposed to be kept by claimant which books were required to be left at the offices of the company unless consent was obtained to take them home. The company maintained a special bank account for claimant and deposited the money collected from customers. Claimant's check book, used to draw on said bank account, was required to be left at the office. The company had a right to inspect claimant's route and did so inspect it by maintaining a relief man who occasionally relieved claimant. This relief man, who was an employee of the company, made reports to the company on the condition of claimant's route. Some collections from customers on claimant's route were also made by a relief man who turned into the company all sums so collected. In addition to the above, the company made "suggestions" and "offered advice" as to how claimant should increase sales, make collections, etc. The contract

under which claimant performed his services could be terminated by the company at any time upon two weeks' notice or within 24 hours where a "technical" breach of the contract had been made.

While there is dispute in the evidence as to some of the above facts, the evidence in the record clearly discloses that the commission might reasonably have found that the claimant was not free from "control" and "supervision" under his contract with the plaintiff and in fact.

Nor can we say that the evidence compelled a finding by the Commission that claimant Foss was engaged in an independently established trade, occupation, profession, or business. By the terms of his contract with plaintiff, claimant never received any right except a personal right to distribute plaintiff's products to plaintiff's customers during the existence of the contract. At the termination of the contract all new customers had to be turned over to the company. Claimant could no longer distribute *any* dairy products within the area described in his contract. He could not at any time sell or assign his rights under the contract. And after the termination of the contract he had nothing, except what credits he might have as a result of obtaining new customers for the company, or what bills he might have outstanding. And as to the bills owing him from customers, it was necessary to obtain the consent of the company to proceed to make collection thereon.

The order of the Industrial Commission awarding unemployment benefits to the applicant Robert L. Foss is affirmed.

WOLFE, J., concurs.

MOFFAT, Chief Justice (concurring).

Within the terms of the Act, Foss was rendering service for wages under a contract of hire. I concur in the result reached.

LARSON, Justice (concurring).

I concur in the result.

PRATT, Justice (concurring).

I concur in the reasoning and conclusion to the effect that the contractual relationship here is one of employment as defined, and that the Commission's finding that applicant is not excluded by Sec. 19(j) (5) is supported by the evidence.