358 P.2d 340

**WEAR–EVER ALUMINUM, INC.,**
Plaintiff,

v.

**BOARD OF REVIEW of the INDUSTRIAL COMMISSION of Utah, DEPARTMENT OF EMPLOYMENT SECURITY,** Defendant.

No. 9321.

Supreme Court of Utah.

Jan. 18, 1961.

---

4. See Rule 51 U.R.C.P.; Fox v. Taylor, 10 Utah 2d 174, 350 P.2d 154.

Marr, Wilkins & Cannon, J. Thos. Greene, Salt Lake City, Rodewald, Kyle & Burger, Pittsburgh, Pa., for appellant.

Walter L. Budge, Atty. Gen., Fred F. Dremann, Dept. of Employment Security, Salt Lake City, for respondent.

HENRIOD, Justice.

Review of a decision of the Industrial Commission's Board of Review to the effect that plaintiff was liable for contributions to the Utah Unemployment Compensation Fund under the Utah Employment Security Act. Affirmed.

Plaintiff, subsidiary of Aluminum Company of America, has a line of cutlery for sale to the public. It channels it through "distributors," whose activities invited the Commission's decision and this review.

Four witnesses testified,—two of whom unquestionably were employees of plaintiff and two of whom were "distributors" whose "employment" status here is questioned under the Act. They testified in effect that distributors enter into written contracts with Wear-Ever to solicit orders for the sale of plaintiff's wares. A suggested price list is to be furnished, which list, however, might be ignored. Also that distributors may give premiums to promote sales, but that no control is exercised over them as to time or area of operation; that they make no reports, get no instructions, submit no customer lists. Further, that they might sell competitive merchandise, need not attend meetings, may employ others to sell, receive demonstration kits which they may purchase if they wish, need not use company order forms, meet any quotas, or collect amounts except on cash sales. They might stockpile the wares for sale. They are not furnished office or phone facilities. They use their own stationery and furnish their own transportation. They have no duty to repossess goods, adjust complaints and are not sub-

ject to reprimand. They do not participate in any company pension plan and income taxes are not withheld from their income from sales.

██ The above testimony represents facts that most favorably support plaintiff's contention that such distributors do not perform services for Wear-Ever for wages within the meaning of Title 35–4–22(j) (1), Utah Code Annotated, 1953, the only question involved here. Its language, so far as pertinent here is as follows: " 'Employment' means any service performed * * * for wages or under any contract of hire written or oral, express or implied."[1] Plaintiff urges that such facts are uncontradicted in the record. We disagree and in support canvass the facts in a light most favorable to the defendant, as we must under familiar appellate review practice, which facts we feel are fairly abstracted as follows:

Wear-Ever maintains an office in Salt Lake City operated by a salaried Division Sales Manager for whose activities the company makes contributions to the Fund. He is responsible to the company and its office in Pennsylvania. He seeks distributors by personal contact and otherwise and relays information about them to the home office for action as to whether a particular distributor is acceptable or not.

Plaintiff's brief, in comparing a distributor's status with that of other companies, concedes that "There is no agreement[2] except in accordance with the printed form." This concession, it seems to us, in many respects contradicts the testimony of the four witnesses mentioned and invites us to look at the agreement:

It provides that the distributor, called an independent contractor, agrees "to *solicit orders* for the sale of the company's cutlery products"[3] "in the following territory." The distributor agrees to return catalogues, price lists and order forms furnished, at agreement's end. At his own expense he must furnish a bond to secure monies due the company. The company agrees to ship products on orders "that have been *accepted by the company*." Discounts ranging from 30% on cash sales to 20% on conditional sales innure to the benefit of the distributor, based on the company's "current price list." Where deferred time payment conditional sales are effected, title is retained in the company. It suffers any loss on such sales and repos-

1. No issue is presented here with respect to any aspects of exclusion under Title 35–4–22(j) (5) (A), (B), and (C), which see.
2. Between the company and the distributor.

3. This is one of the distinguishing differences from Fuller Brush Co. v. Industrial Comm., 99 Utah 97, 104 P.2d 201, 129 A.L.R. 511, where dealers were required to purchase the wares and could not simply solicit orders.

sesses the goods if necessary, with no ensuing loss to the distributor and with no duty on the part of the latter to do the repossessing. If conditional sales are paid out in full, the distributor receives an additional 5%, payable to him monthly by the company. He also gets additional remuneration after he exceeds $1,500 in sales. In case of a conditional sale, a company conditional sales contract form is required for the purchaser to sign, wherein title is retained, not by the distributor, but by a company finance agency. The agency is designated therein as the seller. So much for the agreement.

The Division Sales Manager conducts sales meetings which the distributor may or may not attend. He furnishes literature to increase sales. He aids distributors in sales contacts, and whichever of the two gives the demonstration it is he who gets the discount or commission on any sales made. On request he aids those whose sales drop. About 50% of the orders are sent through him. All sales taxes are handled and paid by the company.

Plaintiff relies heavily on the Fuller Brush case and says "The question at bar is whether the Wear-Ever distributors are like those of Fuller Brush or like those of Creameries,[4] Salt Lake Tribune,[5] Singer,[6] Northern,[7] and Leach." [8]

It is elementary that each case must be decided on its own particular set of circumstances, and we think the question is whether the facts of the instant case bring it within enunciated principles oft-repeated in our earlier decisions. We believe the facts here amply sustain the referee's conclusion that the distributors were in "employment" with the plaintiff within the letter and spirit of the Employment Security Act as construed, and reflected in the pronouncements found in the specific cases mentioned by plaintiff, supra, and in which group we think Salt Lake Transp. Co. v. Bd. of Review [9] should be included. We are further of the opinion that this case clearly is not on all fours with the Fuller Brush case and is quite distinguishable from a vendor-vendee relationship, which was held to be the case there.

It would belabor this decision to repeat the principles mentioned, including the broader concept under the Act, as we have interpreted it, than existed under the common law anent such terms as "employment," "personal services," "wages" and the like. It would serve no useful purpose to compare the facts of all the cases gone

4. Creameries of America v. Industrial Comm., 98 Utah 571, 102 P.2d 300.
5. Salt Lake Tribune Pub. Co. v. Industrial Comm., 99 Utah 259, 102 P.2d 307.
6. Singer Sewing Machine Co. v. Industrial Comm., 104 Utah 175, 134 P.2d 479.
7. Northern Oil Co. v. Industrial Comm., 104 Utah 353, 140 P.2d 329.
8. Leach v. Bd. of Review, 123 Utah 423, 260 P.2d 744.
9. 5 Utah 2d 87, 296 P.2d 983.

before or to attempt to distinguish them all. We refer the reader to those cases with the conviction that upon their examination the conclusion will be reached that in the instant case the "distributors" were in "employment" within the letter and spirit of the Act as we have interpreted it.

WADE, C. J., and McDONOUGH, CALLISTER and CROCKETT, JJ., concur.