GAY HILL FIELD SERVICE, Petitioner,

v.

BOARD OF REVIEW OF the INDUSTRIAL COMMISSION, DEPARTMENT OF EMPLOYMENT SECURITY, Respondent.

No. 870132–CA.

Court of Appeals of Utah.

Feb. 19, 1988.

John Spencer Snow (argued), Snow & Halliday, Salt Lake City, for petitioner.

Linda Wheat Field, Asst. Atty. Gen., Winston M. Faux (argued), Sp. Asst. Atty. Gen., Dept. of Employment Sec., Salt Lake City, for respondent.

Before BILLINGS, ORME and MURPHY,* JJ.

## OPINION

BILLINGS, Judge:

Petitioner, Gay Hill Field Service ("Gay Hill"), appeals from an order of the Industrial Commission affirming an administrative determination that sums paid to interviewers contracting with Gay Hill constituted wages for services in employment pursuant to Utah Code Ann. § 35–4–22(j)(1), 35–4–22(j)(5), and 35–4–22(p) (1985) of the Utah Employment Security Act ("the Act"). We affirm.

Because it is integral to our decision, we set out the factual background in detail. On appeal, we view the facts in the light most favorable to the agency's findings. *See Wilson v. Industrial Comm'n*, 735 P.2d 403, 405 (Utah Ct.App.1987).

## FACTUAL BACKGROUND

Gay Hill Field Service is a sole proprietorship which conducts consumer surveys and opinion polls for approximately 200 national research companies who desire to use the Salt Lake area for their market research. Gay Hill supplies interviewers to conduct the polls.

Gay Hill receives survey materials from the market research company for each survey. It then contracts on a project by project basis with the interviewers, who may accept or refuse any survey job.

Upon acceptance of a survey contract, the interviewers attend a training meeting with Gay Hill during which Gay Hill, or one of its three supervisors, explains the survey project according to the specifications and instructions provided by the research company. Gay Hill answers questions, but if it is unable to provide the answer, Gay Hill contacts the research company and relays the information to the interviewers.

After the briefing, the interviewers conduct their portion of the survey. Gay Hill maintains three telephone extensions at the office for the interviewers to conduct telephone polls, although the interviewers are free to use their own phones. Each interviewer maintains a time and expense sheet reflecting the dates of the survey, number of interviews, hours worked, mileage, and expenses. Each of these time and expense sheets contains a certification that the interviewer "is a business person" responsible for payments of self-employment tax. The interviewers also certify that the services listed on the sheet have been "performed according to the specifications and instructions" given to them. The interviewers submit the time and expense sheets weekly to Gay Hill. Gay Hill summarizes these sheets on a supervisor's invoice which is sent to the research company. The company then remits the amount due to Gay Hill and Gay Hill pays the individual interviewers, retaining the balance for its supervision fee, expenses, and profit.

When an interviewer completes a project, Gay Hill edits the work for accuracy. The research companies require Gay Hill to validate ten to twenty percent of the work

---

* Michael R. Murphy, Judge, Third Judicial District Court, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(1)(j) (1987).

performed by the interviewers. At times, a representative of a research company will visit the field site to monitor the survey. The company representative will report any complaints to Gay Hill, who must deal with the interviewers and remedy the situation. If Gay Hill considers any interviewer unacceptable, it will not contract with him or her for further work.

Many of the interviewers have other employment. A few of the interviewers contract with competitors of Gay Hill or directly with the research companies.

Mark Huntington ("Huntington") contracted with Gay Hill under the conditions previously described. However, Huntington performed ninety percent of his services in the office of Gay Hill, using the phones it had available. Huntington believed he was required to do the work at Gay Hill's home office. An officer of Gay Hill personally instructed Huntington, since he did not have previous experience, listened in on Huntington's telephone polls to critique his work, and gave him advice on ways to improve his work. Gay Hill paid Huntington $5.50 per hour and reimbursed him for his mileage to and from work. Huntington worked evenings, using the income to pay his school tuition. He has never worked for another market research company.

When Gay Hill had no further evening work available, Huntington filed a claim for unemployment compensation benefits. His claim prompted an investigation which led to the hearing before the appeal referee who issued a decision on March 17, 1987. The appeal referee held that Huntington and other interviewers employed by Gay Hill performed services constituting employment under the Act. Gay Hill was required to pay unemployment compensation contributions from January 1, 1982 forward, by a specified date.

■ The decision of the Commission is entitled to deference because of the agency's expertise. *See, e.g., Utah Dep't of Admin. Servs. v. Public Serv. Comm'n,*

658 P.2d 601, 610 (Utah 1984). However, the decision is subject to judicial review to assure that the facts support the conclusions arrived at by the Commission and that the decision falls within the limits of reasonableness or rationality. *Barney v. Department of Employment Sec.,* 681 P.2d 1273, 1275 (Utah 1984); *Utah Dep't of Admin. Servs.,* 658 P.2d at 610.

## UTAH EMPLOYMENT SECURITY ACT

■ Gay Hill does not challenge the finding that the interviewers performed a personal service for Gay Hill for wages, as defined by sections 35–4–22(j)(1), 35–4–22(j)(5), and 35–4–22(p). *Superior Cablevision Installers, Inc. v. Industrial Comm'n,* 688 P.2d 444, 446 (Utah 1984); *Singer Sewing Machine Co. v. Industrial Comm'n,* 104 Utah 175, 184, 134 P.2d 479, 482 (1943). Rather, Gay Hill contends it is excluded by the "ABC" test contained in Utah Code Ann. § 35–4–22(j)(5)(A), (C) (1985).[1] The test is conjunctive; all parts must be satisfied to exclude an employer from the Act. *Nielsen v. Department of Employment Sec.,* 692 P.2d 774, 776 (Utah 1984); *see Allen & Assocs. v. Board of Review, Indus. Comm'n,* 732 P.2d 508, 509 (Utah 1987) (per curiam). Our opinion issued today in *Ellison, Inc. v. Industrial Comm'n,* 749 P.2d 1280, 1282–83 (Utah Ct. App. Feb. 18, 1988), contains a more complete discussion of the conjunctive rule.

■ The Commission found that Huntington and the other interviewers were not free from the control and direction of Gay Hill, and thus held that Gay Hill had not satisfied section 35–4–22(j)(5)(A). In 1985, this section provided:

(5) [s]ervices performed by an individual for wages ... are deemed to be employment subject to this act unless ...:

(A) The individual has been and will continue to be free from control or direction over the performance of these services ...

1. The Act, Utah Code Ann. § 35–4–22(j)(5)(A), (C), was amended in 1986 after the hearing in this case to eliminate section 35–4–22(j)(5)(B). However, that amendment is not relevant to our determination.

On appeal, Gay Hill relies on *Barney* to support its claim that the interviewers are not within its direction and control. In *Barney*, drywall nailers set their own hours, worked for multiple contractors on any one day, and were never trained or supervised by the contractor while on the job. The supreme court found no evidence in the record that Barney exercised *any* control over the performance of the nailers and finishers. *Barney*, 681 P.2d at 1275.

This case is factually distinguishable from *Barney*. Although the research company initially establishes the detailed instructions for each project, Gay Hill briefs and instructs each interviewer as to the precise methodology to be used on each project. If, after beginning his or her work, an interviewer has questions as to the correct procedure or methodology, Gay Hill provides the answer. The interviewer must adhere to the instructions, time periods, quotas, and other specifications conveyed by Gay Hill. When an interviewer completes a project, Gay Hill checks the work for accuracy before submitting the results to the research company. Any complaints as to the interviewers' work are handled by Gay Hill, and it is responsible for taking any necessary remedial action.

A more factually similar case is *Salt Lake Tribune Pub. Co. v. Industrial Comm'n*, 99 Utah 259, 102 P.2d 307 (1940). As with Gay Hill's relationship to its interviewers, the publishing company in *Salt Lake Tribune* gave the initial instructions to its newspaper carriers, assisted them when needed, and handled the complaints which came from subscribers to the newspaper. The court held the publishing company exercised direction and control over the newspaper carriers.

There is substantial evidence to support the Commission's finding that Gay Hill directed and controlled the interviewers. We accord great deference to the appeal referee's findings of basic facts. Based upon those facts, the Commission's conclusion that Huntington and the other interviewers do not meet the exception of 35-4-22(j)(5)(A) is within the scope of reasonableness and rationality. *Barney*, 681 P.2d at

1275; *Utah Dep't of Admin. Servs.*, 658 P.2d at 610.

Since the exclusion test is conjunctive, and Gay Hill has failed to meet requirement "A," it is inconsequential that it may well meet the other provisions of section 35-4-22(j)(5).

## STATUTE OF LIMITATIONS

Gay Hill also claims on appeal the Department of Employment Security cannot assess it for payment of unemployment compensation contributions for the entire period from January 1, 1982 to the present. Gay Hill claims the three-year statute of limitations, Utah Code Ann. § 78-12-26 (1987), bars the Department's attempted five-year retroactive collection of unemployment compensation contributions.

Section 78-12-26(4) provides a three-year statute of limitations. This section provides:

an action for a liability created by the statutes of this state, other than a penalty or forfeiture under the laws of this state, except where in special cases a different limitation is prescribed by the statutes of this state.

■ While we agree that section 78-12-26(4) is the applicable statute of limitations, the crucial issue is *when* this statute of limitations begins to run. The Utah Supreme Court, in *State Tax Comm'n v. Spanish Fork*, 99 Utah 177, 181, 100 P.2d 575, 577 (1940), considered the issue of when this statute began to run in an action to recover sales tax. The court directed that, under the substantially similar precursor to the current section 78-12-26, civil actions must be brought within the prescribed time "after the cause of action has accrued." *Id.* at 181, 100 P.2d at 577 (quoting Rev. Statutes of Utah § 104-2-1 (1933)). The court stated that a cause of action "accrues at the time it becomes remediable in the courts." *Id.*

The court explained that ordinarily this accrual would occur "when the debt is due and payable." *Id.* at 182, 100 P.2d at 577. However, "when some controlling statute ... provides that an additional thing be

done ... such as a statutory provision that a return must be filed, ... the statute of limitations does not start to run until [the return is made]." *Id.*

The court concluded that, when suing for such a claim, the Tax Commission "must sue for a stated amount." *Id.* at 183, 100 P.2d at 577. "It cannot ask the court to fix the amount which should have been administratively fixed." *Id.* Thus, the court concluded that the statute would begin to run only when the taxpayer filed the required return, or the Tax Commission filed on the taxpayer's behalf in order to administratively determine the amount of tax due. The court's rationale was that "[t]he omission of an imposed duty designed to advise an administrative body of an event which sets its process in motion, should not accrue to the advantage of the one who failed in the duty." *Id.* at 184, 100 P.2d at 578.

*Spanish Fork* is directly applicable to the statutory scheme for employer payment of unemployment compensation contributions. Section 35–4–17(h)(1) of the Act provides "[e]ach employer shall furnish the commission such information as is necessary for the proper administration of this act and shall include wage information for each employee, for each calendar quarter beginning October 1, 1984." The rule promulgated by the Utah Department of Employment Security for section 35–4–17(h) states that "[e]ach employer must report to the Department all of the wages of each employee each quarter" specifying that "[t]he wage list for a quarter must be filed by the last day of the month following the end of that calendar quarter." In addition, in section 35–4–17(b), there is a provision in the event the employer fails to file the necessary report whereby the Commission may determine the amount of wages paid for employment during the period for which the reports should have been made.

■ Gay Hill has not filed the reports required to determine its contribution as an employer. Only after the administrative hearing was Gay Hill found liable for the payment of contributions under the Act. Under *Spanish Fork*, the statute of limitations did not begin to run until the necessary wage reports were filed by Gay Hill, or by the Department on its behalf, pursuant to section 35–4–17(b). The appeal referee's decision ordered the filing of wage reports and payment of the required unemployment compensation contributions by December 31, 1986. This determination constituted a decision sufficient to activate the statute of limitations since the claim is now remediable in the courts under *Spanish Fork.* The wage reports, although not yet filed, have been ordered to be filed and, when completed, will provide the necessary amount.

■ Thus, under the applicable statute of limitations, the Department had three years *from* December 31, 1986 to bring an action to recover the unemployment compensation contributions covered by the wage reports it administratively ordered Gay Hill to file. The statute of limitations, then, has no applicability to the separate question of how far *back* in time the Department could go in requiring Gay Hill to file reports and pay contributions. The Act is silent on this question and the Department theoretically could have required Gay Hill to file reports and pay compensation contributions for an unlimited number of years under the *Spanish Fork* decision, *see Spanish Fork,* 99 Utah at 184–187, 100 P.2d at 578–79 (Larson, J. dissenting in part), if not otherwise barred by some equitable theory. However, the Department has imposed an administrative limitation of five years. The Department's order that Gay Hill was liable for unemployment compensation contributions from January 1, 1982 forward was within that self-imposed limitation.

Affirmed.

MURPHY and ORME, JJ., concur.