**PRO–BENEFIT STAFFING, INC., Plaintiff,**

**v.**

**BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.**

No. 880288–CA.

Court of Appeals of Utah.

April 7, 1989.

---

Stephen W. Cook, Midvale, for plaintiff.

K. Allan Zabel and Alan Hennebold for defendant.

Before DAVIDSON, NEWEY[1] and ORME, JJ.

## OPINION

NEWEY, Senior Judge:

Pro–Benefit Staffing, Inc. ("Pro–Benefit") seeks judicial review of decisions of the Board of Review of the Industrial Commission and of the Department of Employment Security holding that Pro–Benefit is not an "employer" for purposes of the Employment Security Act, Utah Code Ann. Title 35, Chapter 4. We affirm.

Pro–Benefit provides personnel-related services to other, mainly small businesses ("Clients") in return for a fee calculated as a percentage of the total payroll. Thus, using information provided by the Client, Pro–Benefit calculates the Client's payroll, cuts checks for wages and taxes drawn on Pro–Benefit's account, and delivers the paychecks to the Client for distribution to the employees. When delivering the paychecks, Pro–Benefit receives a check from the Client for the amount of the payroll plus its fee. If the check from the Client is not thus received, Pro–Benefit disavows any obligation to pay the accrued wages, refers the employees to the Client, and regards its relationship with the Client as terminated retroactively to the end of the previous pay period.[2]

Besides payroll services, Pro–Benefit provides fringe benefits to the employees according to options selected by the Client for whom the employees work. For some Clients, Pro–Benefit also solicits applications for vacant positions, receives referrals from Job Service and employment agencies, and does some initial screening, although the final decision to hire a specific person is left to the Client in nearly every case. Pro–Benefit also handles workers' compensation matters for its Clients and assists them in complying with regulatory requirements relating to personnel.

The employees are supervised, as a practical matter, by the Client. Pro–Benefit has a Client-designated "on-site supervisor" who nominally exercises supervisory

---

1. Robert L. Newey, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(1)(j) (1987).

2. If Pro–Benefit is the employer, the arrangement is clearly in conflict with Utah Code Ann. section 34–28–3 (1987), which provides: "Every employer shall pay to his employees the wages earned semimonthly or twice during each calendar month on days to be designated in advance by the employer as the regular payday...."

Section 34–28–5(1) additionally provides:

Whenever an employer separates an employee from his payroll, the unpaid wages of such employee shall become due immediately, and the employer shall pay such wages to the employee within 24 hours of the time of separation at the specified place of payment.

In case of failure to pay wages due an employee within 24 hours of a demand therefor, the wages of such employee shall continue from the date of separation until paid....

authority on behalf of Pro–Benefit, but ordinarily, the on-site supervisor is the owner of the Client business or a foreman appointed by the Client's management.

Pro–Benefit's functions are performed pursuant to a contract negotiated between Pro–Benefit and the Client. To implement the arrangement, the Client terminates the employment of all its employees, and the employees are then immediately rehired by Pro–Benefit. The employees are, under current practices, informed of these changes after the fact by a letter to them from Pro–Benefit. The employees are then assigned by Pro–Benefit to work for their former employer, the Client, at their same jobs. The net result of the formal maneuvering via the contract between Pro–Benefit and the Client is little different, as a practical matter, from the situation that existed before Pro–Benefit became involved, except that Pro–Benefit handles payroll, employee benefits, and a few other personnel-related administrative matters.

Pro–Benefit seeks to be treated as the "employer" within the meaning of the Employment Security Act and to pay the unemployment contributions required for the employees serving the Clients at the Clients' workplaces and in the normal course of the Clients' businesses. The Department of Employment Security has refused to recognize Pro–Benefit as the "employer" under these circumstances, and it is from that refusal that Pro–Benefit appeals.

Pro–Benefit raises an initial question concerning the adequacy of the notice it received of the administrative hearing. After filing its notice of appeal from the decision of the Department's Field Auditor, Pro–Benefit was notified of the time and place of the appeal hearing by a written form which phrased the issue as "whether 'leased' employees are reportable to the Department as Pro–Benefit's employees or those of their Clients." Pro–Benefit asserts that the issue was actually whether it held the status of an employer under the Employment Security Act. There is, however, no substantial distinction between the issue as phrased in the Department's notice and the issue as perceived by Pro–Benefit, since the employees must be reported only if Pro–Benefit is their employer. Although the words vary slightly, the concepts they express are not so different as to fail to fairly apprise Pro–Benefit of the nature and consequences of the controversy.[3]

Turning to the principal issue, Pro–Benefit argues that it is the proper party to be required to pay unemployment contributions. Since unemployment contributions are imposed by statute, the question presented by this argument is fundamentally one of statutory construction. Specifically, Utah Code Ann. section 35–4–7(a)(1) requires an "employer" to make unemployment contributions. "Employer" is defined as an "employing unit" within certain time, wage amount, and other limitations.[4] "Employing unit" is, in turn, defined as "any individual or type of organization ... which has ... one or more individuals performing services *for it* within this state." [5] The word "services," although frequently used in the Act, is not defined.[6] Rather than

---

**3.** *Compare Nelson v. Jacobsen,* 669 P.2d 1207, 1212 (Utah 1983) with *Traylor Brothers, Inc./Frunin–Colnon v. Overton,* 736 P.2d 1048 (Utah App.1987). The claimed lack of notice in the instant case is particularly unconvincing due to the fact that the administrative hearing had to be held twice due to failure of the recording equipment. Pro–Benefit appeals from the determination made from the second hearing, for which it had already had a complete dry run.

**4.** Utah Code Ann. section 35–4–22(i) (1987).

**5.** Utah Code Ann. section 35–4–22(h) (1987) (emphasis added).

**6.** Section 35–4–22(j)(5) (1987) specifies that "[s]ervices performed by an individual for wages or under a contract of hire ... are considered to be employment subject to this chapter, unless [the A/B test is satisfied]." Although this section could be read as shedding some light on the meaning of "services," *see Creameries of America, Inc. v. Industrial Commission,* 98 Utah 571, 580, 102 P.2d 300, 304 (1940), later cases have not read section 35–4–22(j)(5) as defining "services" but rather only as creating an exclusion from the broad concept of "employment." *Singer Sewing Machine Co. v. Industrial Commission,* 104 Utah 175, 134 P.2d 479 (1943); *Fuller Brush Co. v. Industrial Commission,* 99 Utah 97, 104 P.2d 201, 201–02 (1940); *Adele's Housekeeping, Inc. v. Department of Employ-*

focusing on "services," case law has instead relied on the definition of "employment" as defining the characteristics of an employer.[7] "Employment" is broadly defined and liberally construed[8] so as to include "any service ... performed for wages or under any contract of hire written or oral, express or implied,"[9] subject to certain enumerated exceptions and the general exclusion of section 35–4–22(j)(5). Applying these statutes in light of the extensive case law interpreting them, our task is to determine whether the employees render a service for Pro–Benefit and "for wages or under a contract for hire."

The concept of a "contract for hire" and the resulting "employment" imply a relation by which one party, the employer, receives services from one or more employees working under the employer's control.[10] In *Fuller Brush Co. v. Industrial Comm'n*,[11] the Supreme Court recognized that an "artificial relationship" could be attempted in relation to employment security requirements, and then looked to factors such as whether "services are performed ... under [the purported employer's] supervision, direction and control, in the performance of the details of the work and in the use of the means employed," whether the purported employer "has the right to hire (select the worker) and the right to fire (terminate the employment), and [whether] the compensation, if any, accruing to the worker becomes a direct liability on the [purported employer]."[12]

Applying those factors to this case, it is apparent that Pro–Benefit lacks the requisite decision-making power to qualify as an employer. The supervision by Pro–Benefit is, as the appeal referee found, merely the "facade of control." The "on-site supervisor" designated by Pro–Benefit is the Client's owner or manager, who does not look to Pro–Benefit for instructions in running the business or even communicate with Pro–Benefit, except to notify Pro–Benefit of information needed to perform administrative and clerical functions. As a practical matter, it is the Client's owner or manager who performs all of the following elements of the employer's role:

1. Directs the work and specifies the manner and method of accomplishing it.

2. Trains the employees in how to perform the work.

3. Determines if, when, and which employees will be hired, dismissed, or laid off.

4. Determines rates of pay and the availability of employee benefits.

5. Assigns tasks; schedules hours of work and vacations.

6. Directs and leads the employees in the general conduct of the Client's business activities.

The lack of genuine control by Pro–Benefit in this case is particularly evident in the fact that there is no change in the employment relation or in the actual work done

*ment Security*, 757 P.2d 480, 481 (Utah App. 1988). Moreover, viewing section 35–4–22(j)(5) as definitional yields only a circular definition of little value, since section 35–4–22(j)(5) would thus define "service" in terms of employment, and section 35–4–22(j)(1) defines "employment" as service. The more sound analytical direction, and that indicated in more recent cases, is to define "employer" with reference to the related word "employment," which is defined in section 35–4–22(j)(1), with the word "service" therein understood in its usual, everyday meaning.

7. *E.g., Superior Cablevision Installers, Inc. v. Industrial Comm'n*, 688 P.2d 444, 446 (Utah 1984); *Enterprise, Inc. v. Dep't of Employment Sec.*, 680 P.2d 403, 404 (Utah 1984); *Wear–Ever Aluminum, Inc. v. Industrial Comm'n*, 11 Utah 2d 283, 358 P.2d 340 (1961); *Fuller Brush Co. v. Industrial Comm'n*, 99 Utah 97, 104 P.2d 201,

202, 129 A.L.R. 511 (1940); *Adele's Housekeeping, Inc. v. Dep't of Employment Sec.*, 757 P.2d 480, 482–83 (Utah App.1988); *Gay Hill Field Service v. Industrial Comm'n*, 750 P.2d 606 (Utah App.1988).

8. *Superior Cablevision Installers, Inc. v. Industrial Comm'n of Utah*, 688 P.2d 444, 447 (Utah 1984); *Salt Lake Transportation Co. v. Industrial Comm'n*, 5 Utah 2d 87, 296 P.2d 983, 984 (1956).

9. Utah Code Ann. section 35–4–22(j) (1987).

10. *Enterprise, Inc. v. Department of Employment Sec.*, 680 P.2d at 404.

11. 99 Utah 97, 104 P.2d 201, 129 A.L.R. 511 (1940).

12. 99 Utah at 102–03, 104 P.2d at 203 (citation omitted).

following the pro forma firing and rehiring of the employees and the "leasing" of them by Pro–Benefit to the Client.

We recognize that the relation between Pro–Benefit and the employees has the trappings of a contract for hire, but in determining liability for unemployment contributions, we look past superficial or contrived indications of employment status to the actual substance, dynamics, and economic reality of the relation between the worker and the person for whom he works.[13] In that light, it is the Client who is benefitted by the employees' services and who provides the business purpose for which they work, as apparent from the lack of substantial, non-ministerial decision-making by Pro–Benefit in relation to the employees.

Therefore, we hold that the relation between Pro–Benefit and the employees serving its Clients is not sufficient to place upon Pro–Benefit the responsibility of paying unemployment contributions for those employees. The order of the Department of Employment Security is therefore affirmed.

DAVIDSON and ORME, JJ., concur.

---

**13.** *Salt Lake Transp. Co. v. Industrial Comm'n,* 296 P.2d at 984; *Powell v. Industrial Comm'n,* 116 Utah 385, 210 P.2d 1006, 1010 (1949); *Adele's Housekeeping, Inc. v. Department of Employment Sec.,* 757 P.2d at 483; *Ellison, Inc. v. Industrial Comm'n,* 749 P.2d 1280, 1284 (Utah App.1988) *cert. denied,* 765 P.2d 1278 (Utah 1988).