453 P.2d 142

**NORTH AMERICAN BUILDERS, INC.,**
Plaintiff,

v.

**UNEMPLOYMENT COMPENSATION DIVISION, DEPARTMENT OF EMPLOYMENT SECURITY, State of Utah,** Defendant.

**No. 11277.**

Supreme Court of Utah.

April 8, 1969.

Carl J. Nemelka, Salt Lake City, for plaintiff.

Phil L. Hansen, Atty. Gen., Fred F. Dremann, Salt Lake City, for defendant.

CALLISTER, Justice:

Certiorari to review a decision of the Board of Review of the Industrial Commission affirming the order of the Department of Employment Security and the Appeals Referee that the plaintiff, North American Builders, Inc., is liable for contributions to the Unemployment Compensation Fund on moneys paid by it to certain installers under the provisions of Sec. 35–4–22 et seq., U.C.A.1953.

Specifically, the question to be determined is whether, under the circumstances, the installers involved are excepted from the Act by the provisions of Sec. 35–4–22 (j) (5) which reads:

Services performed by an individual for wages or under any contract of hire, written or oral, express or implied, shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that—

(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of hire and in fact; and

(B) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C) Such individual is customarily engaged in an independently established trade, occupation, profession, or busi-

ness of the same nature as that involved in the contract of service.[1]

Plaintiff is engaged in the business of selling metal siding and other materials for home improvements. Salesmen solicit orders from home owners and enter into contracts on forms furnished by the plaintiff. The parties to the contract are the plaintiff and the home owner, and plaintiff is obligated thereunder to furnish the materials and install them. The installation is done by installers who receive from plaintiff $17 per square of hundred feet with an additional $5 per square for stripping or work 100 miles beyond Salt Lake City. If the installer must perform any extra labor, the salesman must approve and pay for the same.

After the plaintiff approves a contract submitted by a salesman, it contacts an installer to inquire if he will contract to perform the installation. There are approximately 15 crews in the area who are engaged in this special trade. The number of companies engaged in business similar to plaintiff's is also limited. The two groups are familiar with each other by reputation without the necessity of advertising. The siding companies have the names, addresses, and telephone numbers of the installers, and the installers also contact the companies to determine if there were work available.

If an installer accepts a project, he picks up the materials at plaintiff's warehouse and goes to the job site. If he needs additional supplies, he may contact plaintiff or go to a lumber yard and either charge the materials to plaintiff or pay cash and be reimbursed. The installer furnishes his own truck and tools, hires his own helpers and determines their compensation. There is no evidence to indicate that plaintiff exercises any direction or control over the manner or means by which the applicator accomplishes the result. The installer receives a completion certificate from the home owner and upon presentation thereof to plaintiff, he receives the installation fee. Some of the installers are licensed by the State as specialty contractors.

The Appeals Referee found that the installers were dependent on the supplier contractors for their livelihood, and if unable to obtain employment from these companies, they were unemployed. He concluded that the facts do not show any substantial investment as might be expected of an independent establishment or any development of an independent clientele from which the installer might expect a livelihood independent of his work with the plaintiff or its competitors.

The Board of Review found that plaintiff failed to prove that the individuals were customarily engaged in independently

---

1. Since (A), (B) and (C) are expressed conjunctively, all three requirements must be met if the services of the installers are to be excluded from the Act.

established occupations or businesses within the meaning of Section (j) (5) (C) of the Employment Security Act. The Board observed that, in fact, the testimony fully supports a finding by the Referee that the individuals were not so customarily engaged. It stated that it appeared they were working for wages on a piece rate basis determined by the employer and said services were definitely performed within the definition of the statute.

■ Although the Referee found that the installers were not free from control (j) (5) (A), the Board made no finding in this regard. A survey of the record does not reveal any evidence that reasonably supports a finding that plaintiff exercised any control over the performance of the installers.

The Referee determined that part of the services was performed at plaintiff's place of business (j) (5) (B). The cited evidentiary basis to support this finding was the fact that the installer took his truck to plaintiff's warehouse, where he assisted in loading the materials, which took approximately one-half an hour.

Plaintiff contends that this loading was incidental to the service the installer performed, and we agree. There is no basis to hold that the remuneration paid to the installers for the performance of their skilled work was contingent on their minor participation in this incidental drayage function.

The basic point of contention involves (j) (5) (C); were the installers engaged in an independently established trade or business of the same nature as that involved in the contract of service?

In Leach v. Board of Review,[2] upon which the Board places great reliance in the instant case, this court observed:

In Fuller Brush v. Industrial Comm., supra [99 Utah 97, 104 P.2d 201, 129 A. L.R. 511], we pointed out that a shoe shiner, an auto mechanic, a plumber and a barber meet this requirement because the services which they perform emanate as a part of a business in which they are engaged. They perform services for others while in the pursuit of a business independently established and in which they are customarily engaged and for which service, like a common carrier, they hold themselves out to perform. * * * In other words, the "independently established business" must exist independent of the services under consideration in the sense that it is the whole—of which the particular service is a part. * * *

* * * When the services of a dealer were terminated by the plaintiffs, he became unemployed and had to secure employment elsewhere. He had no business

2. 123 Utah 423, 431–432, 260 P.2d 744, 748 (1953).

of his own to fall back on—a business established independently of his relationship with the plaintiffs and for which his services for the plaintiffs emanate, a business in which he was customarily engaged aside from his relationship with the plaintiffs.

The Board has reasoned that the installers were not engaged in an independently established trade because when they were not employed by plaintiff or its competitors in the industry, they were unemployed. This same argument is equally applicable to any tradesman, if no one among his potential clientele needs his services at a particular time, he is unemployed; but this circumstance does not bring him within the coverage of the Act. The significant aspect is the relationship between the alleged employer and employee. In the Leach case this court stated:

> * * * It is readily apparent that because the installers were so employed,[3] their services which they rendered for the plaintiffs did not emanate from any independently established business in which they were customarily engaged. To the contrary, they were customarily engaged in employment elsewhere for other employers. *None of them were licensed contractors or self-employed car-*

*penters or craftsmen.* [Emphasis added.]

In the case before us, some of the installers had a state specialty contractor's license; others did not. However, there was no distinction made between those who contracted with plaintiff to do the installing and those who were employed by the installers as helpers, since the Board contended that all were employees.

■ The facts in the instant case are not in dispute, it is the legal conclusion to be drawn therefrom that is contested. From the foregoing tests as set forth in *Leach,* we conclude that the installers were self-employed craftsmen, who performed their services for plaintiff and its competitors while in pursuit of an independently established trade in which they were customarily engaged.

A contrary conclusion was reached in *Leach.* However, there are significant differences. The installers in *Leach* were trained by the suppliers after which they entered into a written contract to perform the service necessary to install the products in a workmanlike manner; the installers were regularly employed elsewhere; and, the suppliers were the sole distributors in Utah of Rusco Windows and products and

3. Two of the installers involved were regularly employed by Kennecott Copper Corp., one by U. S. Smelting & Refining Co., one was a salesman, and another's occupation was unknown.

thus were the only persons who could accept orders and supply the windows.

The facts in the instant case are similar to those before the court in Alumiwall Corp. v. Indiana Employment Security Board,[4] wherein the court stated:

The second standard is whether or not such services were an independently established trade, occupation, profession or business. Again it would seem that such applicators were engaged in an independent business. They owned and supplied their own tools and equipment, hired and fired their own helpers, were free to work or not to work as they saw fit, and could perform the same services for other than appellant if they so desired.[5]

Reversed. No costs awarded.

CROCKETT, C. J., and TUCKETT and ELLETT, JJ., concur.

HENRIOD, Justice (concurring):

I concur, but in observing that the main opinion discusses at some length Leach v. Board of Review, 123 Utah 423, 260 P.2d

4. 130 Ind.App. 535, 167 N.E.2d 60 (1960).
5. Contra, All-State Construction Co. v. Gordon, 70 Wash.2d 657, 425 P.2d 16 (1967); Baker v. Cameron, 240 Or. 354, 401 P.2d 691 (1965). The Washington case relied on the Oregon case as a precedent. The Oregon case cited as authority for its decision, O'Brian v. Michigan Unemployment Compensation Comm., 309 Mich. 18, 14 N.W.2d 560 (1944). In O'Brian, the installers provided their

744 (1953), I suggest that this may be a propitious time to overrule that 16-year-old case, which, so far as I can determine, has never been cited. This conclusion, on the simple ground that the written contract signed by the supplier and the so-called "franchise dealer" on its face negated any element of control over the latter, who had no obligation whatever to punch a doorbell or even mention Rusco windows, to anyone, anytime, any place.

services under a master contract in which they agreed to accept any job tendered and to work in a neat and workmanlike manner in accordance with the instructions furnished by the company. The decision of the Michigan court was premised primarily on the factor of control, i.e., the installers were subject to control because of the company's contractual right to give instructions.