**Craig BLAMIRES, Plaintiff,**

v.

**BOARD OF REVIEW OF the DEPARTMENT OF EMPLOYMENT SECURITY OF the INDUSTRIAL COMMISSION of Utah, Defendant.**

**No. 15676.**

Supreme Court of Utah.

Sept. 14, 1978.

---

1. 561 P.2d 1268, 1269 (Colo.1977).

2. *State v. Cornwall*, 95 Idaho 680, 518 P.2d 863, 867 (1974).

Hess, Van Waganen, Page & Hess, Gerald E. Hess, Clearfield, for plaintiff.

Robert B. Hansen, Atty. Gen., Winston M. Faux, Sp. Asst. Atty. Gen., Salt Lake City, for defendant.

PER CURIAM:

We here review a decision of the Board of Review of the Industrial Commission of Utah (the "Board") that Plaintiff-Appellant Craig A. Blamires ("Blamires") was not "in employment" during the period between September 1976 and July 1977 so as to qualify for benefits under the Utah Employment Security Act.

During the period in question, Blamires was unquestionably in some kind of business relationship with Medexam of Utah, a corporation; and he claims it was an employment relationship.

The record shows that, in September of 1976, Blamires was engaged by Medexam. No contract covering their relationship was executed, and the record contains no account of the conversations on the basis of which Blamires began performing his services. The nature of the relationship must be determined from the conduct of Blamires and Medexam during the period of their intercourse.

The resolution of the critical issue involves construction of Section 35–4–22(j) U.C.A.1953, as amended, which provides:

(5) Services performed by an individual for wages or under any contract of hire, written or oral, express or implied shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that:

(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of hire and in fact;

(B) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C) Such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the contract of service.

■ In applying the statute to the case at hand, it must first be determined whether the agreement between Medexam and Blamires was a "contract of hire". The Employment Security Act does not define the term, but it has been construed to include any agreement under which one person performs personal services at the request of another who pays for the services.[1] In *Fuller Brush* (see footnote 1), this court said whether an individual should be included on the payroll as an employee for employment security purposes depended on whether he (1) rendered personal services, and (2) was entitled to remuneration based on and measured by such personal services. If both were true as to any payroll period, the person performing the service was within the act and under a "contract of hire". We conclude that Blamires performed his services during the period in question under a contract of hire.

Even though the services were performed under a contract of hire, the relationship between Medexam and Blamires was not employment *if* it was shown to the satisfaction of the Commission that (1) Blamires was free from direction and control, (2) his services were either outside the usual business of Medexam or performed outside Medexam's places of business, and (3) Blamires was customarily engaged in an independently established calling.

We have little difficulty with the first two of the exclusionary tests. The record shows that Blamires worked out of his home or an office he rented in Medexam's name. He paid all his own expenses out of his own pocket. He hired his own employees and set up satellite examination clinics on his own initiative. There is no evidence of any Medexam control except over fees.

■ It would appear that the conduct of physical examinations was not outside Medexam's usual course of business. Medexam contracted with employers and insurance carriers to perform physical examinations of their applicants for employment and insurance coverage. Medexam referred some of those applicants to examiners whom Medexam apparently considered to be independent contractors, (such as appellant) but Medexam also employed one or more nurses. Nevertheless, the second test is satisfied because Blamires performed his services outside any places of business which Medexam had previously maintained or which were utilized for any purposes except Blamires'.

■ It is the third exclusionary test which the relationship fails to satisfy, and it must satisfy all three of them if it is to be found something other than an employment relationship. The record shows that Blamires had received paramedic training and qualified, in his own phrase, as an "emergency medical technician". The record does not show, however, that "emergency medical technician" or "physical examiner" is an independently established trade, occupation or profession.[2] Even if it were an indepen-

---

1. *Fuller Brush Co. v. Ind. Comm.*, 99 Utah 97, 104 P.2d 201 (1940); *State ex rel. Murphy v. Welch & Brown*, 187 Okl. 470, 103 P.2d 533 (1940); *Seattle Aerie No. 1 v. Commissioner*, 23 Wash.2d 167, 160 P.2d 614 (1945).

2. In *North American Builders v. Unemployment Comp. Div.*, 22 Utah 2d 338, 453 P.2d 142, for example, the evidence was conclusive that metal siding installation is an independent calling.

dent calling, the record does not show that Blamires was customarily engaged in physical examining as an independently established occupation. On the contrary, such paramedical services as he had performed before his Medexam association were performed as a serviceman or employee. On no occasion, so far as the record shows, did Blamires obtain a business license separate from Medexam's.

 One purpose of Section 22 of the Employment Security Act is to prevent an employer's avoidance of employer obligations (with respect to employment security, social security, and workmen's compensation, among others) by putting another label on a relationship which is essentially employment. We do no damage to the business community by holding that Blamires (in performing a service for Medexam of a kind Medexam held itself out as able to perform, for remuneration measured by the service Blamires performed, and paid by Medexam at a rate fixed by Medexam) was indeed in Medexam's employment; and we so hold.

The Board argues strongly that the Medexam-Blamires relationship was in fact a franchise relationship. We do not intend by this decision to compel franchisors to treat their franchisees as employees. We cannot imply a franchise relationship from the conduct of Medexam and Blamires as reflected by the record in this case.

██ The findings of the Board are only final and binding upon us when supported by substantial, competent evidence;[3] however, the record is totally deficient to support a finding that Blamires was "customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the contract of service."

The matter is remanded to the Board for disposition consistent with this opinion.

---

3. *Whitcome v. Dept. of Emp. Sec., Ind. Comm.,* Utah, 563 P.2d 807 (1977).