**Terry BARNEY dba Terry Barney Drywall, Plaintiff,**

v.

**DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.**

**No. 19436.**

Supreme Court of Utah.

April 30, 1984.

Jay Barney, Murray, for plaintiff.

K. Allen Zabel, Floyd G. Astin, Salt Lake City, for defendant.

DURHAM, Justice:

The plaintiff, Terry Barney dba Terry Barney Drywall ("Barney"), appeals from a decision of the Board of Review holding that certain individuals hired to perform services were in Barney's employ and that Barney is therefore liable for contributions to the unemployment compensation fund. We reverse.

This action results from a Department of Employment Security field audit of the Barney operation covering the period Janu-

---

**4.** 605 P.2d at 1250, 1251.

ary 1, 1979, through September 30, 1982. The audit resulted in a conclusion that services performed by certain nailers and finishers constituted employment and assessed Barney for contributions, interest and penalties. There are no claimants involved in this review, and it appears that none of the individuals in question have ever made a claim for unemployment compensation against Barney.

A Department of Employment Security representative held that the individuals were performing services "in employment" for Barney in accordance with the Utah Employment Security Act, U.C.A., 1953, § 35–4–22(j)(5)(A)–(C), which states:

(5) Services performed by an individual for wages or under any contract of hire, written or oral, express or implied, shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that:

(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of hire and in fact;

(B) Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C) Such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the contract of service.

After a hearing, an appeals referee affirmed the Department's decision. The Board of Review, after considering the record and testimony, affirmed, holding that Barney did not make a sufficient showing under the "ABC test," and thus the individuals were performing services "in employment." In so holding, the Board expressly adopted the findings of fact and conclusions of law of the appeals referee.

Barney does not dispute that the nailers and finishers were under "contracts for hire" under the section, but contends that all three elements of the ABC test have been met, and therefore the services are excluded from coverage.

The issue on appeal to this Court is whether the drywall nailers and finishers hired to perform services were in Barney's employ for the purpose of unemployment contributions.

The facts are not in dispute. Barney is engaged in the drywall contracting business. He bids on the hanging and finishing of drywall in construction projects. He conducts his business out of an office in his home. After being awarded a contract, Barney typically engages the services of tradesmen known in the industry as drywall "nailers" and "finishers," whose services are in question here.

The record contains the testimony of two nailers and one finisher, who described the conduct of their business (both as to Barney and other drywall contractors) generally as follows: They do not enter into a written contract with a contractor, but after work commences they bill on a regular basis. They supply their own vehicles, some materials and all of their tools except a tape machine provided by the contractor, not directly available to them due to patent restrictions. The cost of supplies and tools is built into their bids. The nailers and finisher testified that they consider themselves self-employed, claim such on their income tax forms, and pay self-employment quarterly taxes. They agree to complete the work by necessary deadlines, but set their own hours, sometimes working for three or four contractors in one day. They are not supervised by a contractor while on the job.

The testimony also indicated that a contractor could terminate individual nailers and finishers whose work is not up to standard. Nailers and finishers guarantee their work and replace or repair with no additional compensation for the sake of their reputations. They also testified that they provide insurance for themselves and

would not, if injured, apply for workmen's compensation.

Nailers and finishers generally enter the business by serving a four-year apprenticeship for a contractor such as Barney, doing the majority of their work for that contractor. Barney does not dispute that some individuals who are apprentices are in his employ. No apprentice services are in question in this case. After apprenticeship, these persons become journeymen. They generally maintain home offices, where they solicit and accept business opportunities and keep books, records and tools. They work for drywall contractors such as Barney and also accept contracts from private persons for residential drywall work. If they underbid a job, in the sense that the work is more demanding or time consuming than planned, they absorb any associated business losses, since the bids are on a square-foot basis.

■ A decision of the Board of Review of the Department of Employment Security, such as the one before us, is entitled to weight, but is subject to judicial review to assure that it falls within the limits of reasonableness or rationality. *Utah Department of Administrative Services v. Public Service Commission,* Utah, 658 P.2d 601, 610 (1983). Issues governed by this "intermediate" standard, this Court stated, include "what has been described as 'mixed questions of law and fact' or the 'application' of the findings of basic facts ... to the legal rules governing the case." *Id.* (footnote omitted). Thus, we are confined to a determination of whether the facts support the conclusion of law or whether the decision is contrary to the evident purpose of the statute. *Id.* at 611.

■ First, we consider requirement A, whether Barney exercised control over the individuals' performance. The appeals referee found that little control was exercised by Barney, except that he could terminate an individual if he was dissatisfied with the individual's work. Nonetheless, the referee concluded that sufficient control or right of control existed. We disagree. A survey of the record does not reveal any evidence

that supports a conclusion that Barney exercised any control over the performance of the nailers and finishers. The fact that Barney could request that a person abandon a job poorly done, standing alone, is not determinative of a finding of control inasmuch as the right to terminate for unsatisfactory performance is frequently a characteristic of contractual relations between independent entities.

With respect to requirement B, the referee determined that the construction site is the place of business for both Barney and the nailers and finishers, and therefore requirement B is not satisfied. This reasoning could lead to unsound results. It ignores the existence of the individuals' home offices (as well as Mr. Barney's) and other sites where the individuals work during a day, including private residential sites. If the job-site definition of "place of business" were to be utilized for construction workers, any unemployment question involving a subcontractor on a construction site would result in coverage under the act. This is not the intent of the act.

Under requirement C, the individuals must be "customarily engaged" in an independent trade of the same nature as the contract for service. The appeals referee concluded that the subject nailers and finishers were not so engaged. He relied on the following: The individuals worked for more than one employer. They worked on the same basis as they worked for Barney. They did not have business licenses or hire employees. Finally, he found there was no substantial difference between the individuals Barney agrees are employees and the ones the Board claims are employees.

This Court rejected a similar argument in *North American Builders, Inc. v. Unemployment Compensation Division,* 22 Utah 2d 338, 342, 453 P.2d 142, 145 (1969). Tradesmen primarily engaged by a plaintiff and his competitors are not necessarily within the coverage of the act. Nor does the existence of a license determine the independent nature of a trade, there being no evidence in this case of a distinction between a specialist who holds a license

and one who does not.[1] Self-employed craftsmen may not need to set up a business in the manner implied by the Board in order to conduct themselves independently. They may merely, as in the present case, establish relationships with contractors who will engage them when their services are needed.

Lastly, based on the record and testimony, there appear to be substantial differences between individuals Barney agrees are employees and those the Board claims are employees. Mr. Barney's uncontroverted testimony indicates that the nailers and finishers he agrees are employees are in a training process (apprenticeship) and work exclusively or primarily for him unless he has "zero work." Once they become journeymen, he considers them independent. They then are free to work or not as they choose and to perform services for any number of contractors or private persons.

We hold that the decision of the Board does not fall within the limits of reasonableness. The legal conclusion which must be drawn from the facts in the instant case is that the nailers and finishers in question were not in Barney's employ for the purpose of unemployment contributions. The decision of the Board of Review is reversed. No costs awarded.

HALL, C.J., and OAKS, J., concur.

STEWART, J., concurs in the result.

HOWE, Justice (dissenting):

I dissent. Although this case presents a close question, I do not agree with the majority that the decision of the Board of Review does not fall within the limits of reasonableness and rationality. I am satisfied that there is competent evidence on the basis of which the Department, Board of Review and appeal referee reasonably concluded that all three of the A, B and C exclusionary tests had not been met. In such cases, it is our duty to affirm since we are required to canvass the facts in a light most favorable to the findings of the Board of Review. *Wear-Ever Aluminum, Inc. v. Board of Review,* 11 Utah 2d 283, 358 P.2d 340 (1961).

---

1. That the existence of a license provides no clarity in a determination such as this is reflected in the following. The appeals referee and Barney use the phrase "business license." The Board refers only to "license." In *Leach v. Board of Review,* 123 Utah 423, 260 P.2d 744 (1953), this Court discusses the implications of being a "licensed contractor." A nailer testifying at the hearing below stated that since the time period in question he has obtained a "license," but he operates his business in the same manner as before, and he did not indicate whether he was referring to a contractor's license or a business license.