ELLISON, INC., Petitioner,

v.

BOARD OF REVIEW OF THE INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Respondent.

No. 870034–CA.

Court of Appeals of Utah.

Feb. 19, 1988.

Dexter L. Anderson, Fillmore, for petitioner.

Linda Wheat Field, Asst. Atty. Gen., Lorin R. Blauer, Sp. Asst. Atty. Gen., Dept. of Employment Sec., Salt Lake City, for respondent.

Before BILLINGS, ORME and MURPHY *, JJ.

### OPINION

BILLINGS, Judge:

Petitioner Ellison, Inc. ("Ellison") appeals from an Industrial Commission order affirming an administrative determination that Ellison was liable for contributions to the Unemployment Compensation Fund on

---

* Michael R. Murphy, Judge, Third Judicial District Court, sitting by special appointment pur-

suant to Utah Code Ann. § 78–3–24(1)(j) (1987).

sums it paid to truck drivers. On appeal, Ellison seeks a reversal of the Commission's order or, alternatively, a modification of the order limiting its scope to the four truck drivers who testified at the administrative hearing. We affirm.

This action results from a Department of Employment Security field audit of Ellison wherein the auditor concluded Ellison "employed" fifteen truck drivers. Ellison petitioned for a hearing and the appeal referee held the amounts paid to truck drivers contracting with Ellison constituted wages for services in employment pursuant to Utah Code Ann. §§ 35-4-22(j)(1), 35-4-22(j)(5)(A)-(C), and 35-4-22(p) (1985) of the Utah Employment Security Act ("the Act"). The appeal referee assessed Ellison for contributions, interest, and penalties totaling $9,698.46.

Ellison purchases hay from farms in Utah and sells it to buyers primarily in southern California. Ellison engages truck drivers to haul the hay to California in trucks owned by the company, and has the drivers haul back whatever freight is available. The drivers own no interest in Ellison and do not share in its profits. Ellison owns the tractor/trailers and pays all operational and maintenance costs of the vehicles. Ellison assigns which truck the driver will operate. The drivers are not allowed to use the trucks for personal reasons.

Whenever a load of hay is to be shipped, Ellison contacts a driver. Ellison contracts with the truck drivers on a purported "independent contractor" basis. These contracts are either oral or written. Paragraph 6(c) of the written contract requires the driver to personally perform the services. The driver may accept or reject the assignment. If the assignment is accepted, the driver must deliver the load within a time designated by Ellison. The driver picks up the truck at a place designated by Ellison. All of the expenses, with the exception of personal expenses, are paid by Ellison. After the hay is delivered, the driver contacts Ellison regarding possible freight to haul back to Utah. In most instances, Ellison specifies the freight the driver is to pick up. The drivers are paid according to a wage schedule set by Ellison. This schedule delineates the wages for loading, unloading, and driving trips between various destinations.

Four drivers testified at the administrative hearing. The appeal referee examined each driver-witness without objection by Ellison. Ellison, in turn, cross-examined each driver. At the commencement of the hearing, the appeal referee had in his possession all of the documents generated by the field audit and received them into evidence "subject to exception or comment." Ellison made no objection.

The three issues presented on appeal are:

(1) Do the sums paid to the fifteen truck drivers contracting with Ellison during the period of the audit constitute wages for services as employment pursuant to Utah Code Ann. § 35-4-22(j)(1), 35-4-22(j)(5) (1985), or are they excluded under the ABC test of the Act?

(2) Is the evidence sufficient to support the administrative determination that Ellison "employed" all fifteen truck drivers during the period of the audit when only four of the drivers testified at the administrative hearing?

(3) Was Ellison denied a fair and impartial hearing?

## UTAH EMPLOYMENT SECURITY ACT

Whether the truck drivers are "employees" within the meaning of the Act is a mixed question of law and fact. Our role in reviewing the Commission's findings of basic facts is limited by Utah Code Ann. § 35-4-10(i) (1987) which provides that if the Commission's findings of fact are supported by the evidence, these findings are conclusive. *Superior Cablevision Installers, Inc. v. Industrial Comm'n*, 688 P.2d 444, 447 (Utah 1984). Although we defer to the Commission's special expertise, *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 610 (Utah 1983), we review its decision to determine if it falls within the limits of reasonableness or rationality. *Barney v. Department of Employment Sec.*, 681 P.2d 1273, 1275 (Utah

1984); *Utah Dep't of Admin. Servs.*, 658 P.2d at 608. Thus, "[w]e are confined to a determination of whether the facts support the conclusion of law or whether the decision is contrary to the evident purpose of the statute." *Barney*, 681 P.2d at 1275.

Ellison does not dispute the Commission's determination that the truck drivers performed personal services for wages as defined in the Act. Utah Code Ann. § 35-4-1, 35-4-22(j)(1), 35-4-22(p) (1985). Rather, Ellison contends that it is excluded as an employer under Utah Code Ann. § 35-4-22(j)(5)(A)–(C) (1985).[1]

■ On appeal, Ellison urges us to apply subsections (A)–(C) of section 35-4-22(j)(5) in the disjunctive. In this way, if Ellison satisfies the requirements for one subsection, it would be excluded from the Act. However, case law interpreting the application of these subsections is well settled. The requirements of all three subsections must be satisfied in order to exclude the employer from compliance with the Act. *Nielsen v. Department of Employment Sec.*, 692 P.2d 774, 776 (Utah 1984); *North Am. Builders, Inc. v. Unemployment Compensation Div.*, 22 Utah 2d 338, 340 n. 1, 453 P.2d 142, 143 n. 1 (1969). Ellison argues that the 1971 amendments to section 35-4-22(j)(5)(A)–(C) resulted in a disjunctive application of the ABC test. The 1971 amendments inserted a comma in place of the word "and" at the end of subsection (A). Ellison argues that the comma has the same meaning as "or" and, therefore, the exclusions should be applied disjunctively. Common sense, grammatical construction, and an absence of any legislative history to support this construction defeat Ellison's position.[2] *See Allen & Assocs. v. Industrial Comm'n*, 732 P.2d 508, 509 (Utah 1987) (Utah Supreme Court applies the AB test in the conjunctive).

The Commission determined that the truck drivers were under Ellison's "di-rection and control," and that the drivers were not "customarily engaged in an independently established trade ... of the same nature as that involved in the contract of service." Therefore, the Commission concluded that neither subsection (A) nor subsection (C) was met in this case.

■ Since the ABC test is conjunctive, we only discuss whether Ellison satisfied subsection (C). There is substantial evidence in the record to support the Commission's conclusion that subsection (C) was not satisfied because the truck drivers were not engaged in independently established trades.

The intent of subsection (C) is to exclude those workers who have independently established businesses on which they can rely should their separate employment relationships be terminated. *New Sleep, Inc. v. Department of Employment Sec.*, 703 P.2d 289, 293 (Utah 1985). "[A]n independently established business is one which is created and exists apart from a relationship with a particular employer and which survives the termination of that relationship. Its continued existence does not depend on a relationship with any one employer. Thus, a significant aspect of this test is the relationship between the alleged employer and the employee." *Superior Cablevision*, 688 P.2d at 447.

In order to determine whether a person is "customarily engaged in an independently established" business or trade, the Utah Supreme Court has delineated several factors, noting the presence of all of them is not necessary. *New Sleep*, 703 P.2d at 291. These factors include: holding oneself out to the public generally as engaged in a particular business; advertising one's services; having an established clientele; having a place of business; having a contractor's or business license; having special skills as a result of an apprenticeship peri-

---

1. Utah Code Ann. § 35-4-22(j)(5)(A)–(C) was amended in 1986 to delete subsection (B). Subsection (C) is now the new subsection (B). This amendment, however, is not relevant to our decision.

2. In addition to deleting the "and" and inserting a comma at the end of subsection (A), the only other change to section 35-4-22(j)(5) made in 1971 was to change an "in" to an "is." *Both* changes appear corrective in nature and neither had a substantive impact, leaving the meaning of the statute unchanged.

od; and having a substantial investment in tools necessary to do the work. *See, e.g., New Sleep,* 703 P.2d at 291; *Superior Cablevision,* 688 P.2d at 444; *Barney,* 681 P.2d at 1275–76.

The following factors have been found unpersuasive by the Utah Supreme Court in proving the existence of an independently established business or trade under subsection (C): part-time work contracted for "as needed"; flat rate or fixed price payment upon completion of the job; no set working hours; and no obligation to take the assignment. *See New Sleep,* 703 P.2d at 290.

In the instant case, the evidence supports the Commission's findings that the truck drivers were not independently established in the truck driving business. Three of the four truck drivers who testified at the administrative hearing stated that when they contracted to haul hay for Ellison, they hauled exclusively for Ellison. None of the drivers owned their own trucks. They did not hold themselves out to the public as independent trucking concerns. They did not have a place of business or a clientele.

Ellison relies on *Barney* to support its position that the truck drivers were "customarily engaged in an independently established" business of the same nature as the contract for service. However, *Barney* is clearly distinguishable. In *Barney,* drywall nailers and finishers pursued their skilled trade full-time after serving four-year apprenticeships. They maintained offices at their homes where they solicited and accepted business and kept books, records, and tools. Based on these characteristics, the Utah Supreme Court found these workers were independently established.

*Nielsen* is more persuasive authority. In *Nielsen,* our supreme court held that the claimant, one of two truck drivers working for Nielsen, was "employed" by Nielsen. The court found that because the claimant did not own the truck, nor have any ownership interest in Nielsen's enterprise, and because the claimant did not receive profits from Nielsen's enterprise, but instead performed services for wages, neither the claimant nor the two-driver team, as an entity, was subject to exclusion under the ABC test. Because of the factual similarities between the claimant-driver in *Nielsen* and the truck drivers here, we find *Nielsen* supportive of our conclusion that the truck drivers were not independently established.

Despite the fact that the written contracts designated the truck drivers as independent contractors, we find this designation ineffective. Similar characterizations were considered in *Superior Cablevision,* 688 P.2d at 446, and *Leach v. Board of Review,* 123 Utah 423, 434, 260 P.2d 744, 750 (1953). In each instance, the court held that such provisions "are ineffective in keeping an individual without the purview of the Employment Security Act when by his activity he brings himself within." *Leach,* 123 Utah at 434, 260 P.2d at 750. We look beyond the plain language of the contract to the actual status in which the parties are placed. *Singer Sewing Machine Co. v. Industrial Comm'n,* 104 Utah 174, 190, 134 P.2d 479, 485 (1943).

We find that there is substantial evidence to support the Commission's finding that the truck drivers were not independently established in the truck driving business, thereby satisfying subsection (C).

## SUFFICIENCY OF THE EVIDENCE

■ Ellison contends that the evidence is insufficient to support the appeal referee's conclusion that all fifteen drivers working for Ellison during the period of the audit were "employed" by Ellison within the meaning of the Act when only four of the drivers actually testified.

Interested parties are entitled to notice of proceedings which adequately informs them of the specific issues they must be prepared to meet. *Traylor Bros. v. Overton,* 736 P.2d 1048, 1050 (Utah Ct.App. 1987). Ellison had sufficient notice of the issue to be adjudicated. The "Notice of Hearing," sent to Ellison well in advance of the hearing, informed Ellison that the status of all drivers named in the audit was at issue. Specifically, this Notice stated: "[a] hearing will be held to determine whether individuals included in the auditor's audit

performed a service for a wage constituting employment."

Again at the beginning of the hearing, the appeal referee said:

> [The] issue in this hearing is ... whether individual[s] included in the auditor[']s audit performed services for a wage constituting employment under the provisions of the Employment Security Act. Do both parties understand the issue? (Answers in the affirmative)

Moreover, an exhibit introduced into evidence without Ellison's "exception or comment" clearly identified the drivers whose status was the subject of the hearing.

The Commission subpoenaed four of Ellison's fifteen drivers, whose testimony the Commission used to establish the relationship between all of the drivers and Ellison. Based upon the testimony of these four drivers, and absent any evidence they were somehow unique, the appeal referee concluded Ellison's fifteen drivers performed personal services for wages as defined by the Act. The appeal referee also concluded that the truck drivers were under Ellison's direction or control, and were not customarily engaged in independently established trades. If Ellison's relationship with the remaining eleven drivers was different from those of the four drivers who testified, the burden was on Ellison to produce those drivers, or otherwise show how their status differed. Ellison chose not to do so. There was no evidence before the appeal referee suggesting the remaining eleven drivers' relationship with Ellison was different from the one described by the witnesses.

## DUE PROCESS

■ Ellison contends he was denied a fair hearing because the appeal referee examined the witnesses and received the Department's audit reports into evidence. Although we acknowledge the constitutional guarantee of due process may, in some circumstances, be violated when the same person presents the case for one party, cross-examines the witnesses of the other party, and then decides the case, *Burhoe v. Whaland*, 116 N.H. 222, 356 A.2d 658, 659 (1976), this case does not present such a circumstance.

■ The documents about which Ellison complains were properly admitted pursuant to section 35-4-6(c)(J)(2) of the Unemployment Insurance Rules. Unemployment Insurance Rules, Utah Department of Employment Security § 35-4-6(c)(J)(2) (1986). This section provides in pertinent part that "[a]ny official records of the Department, including reports submitted in connection with the administration of the Employment Security Act may be included in the record." Moreover, the appeal referee provided Ellison ample opportunity to object to the admission of this material. Ellison, however, made no objection and this issue cannot now be raised for the first time on appeal. *Barson v. E.R. Squibb & Sons, Inc.*, 682 P.2d 832, 839 (Utah 1984).

■ Our review of the record persuades us that Ellison received a fair hearing. The appeal referee afforded Ellison the opportunity to examine and cross-examine each witness and to present its case. The appeal referee did not intimidate the witnesses. Ellison, although he had a chance to do so, failed to object to the appeal referee's questioning of the witnesses. When one party is not represented by counsel, the appeal referee has an affirmative duty to elicit all relevant facts, including those favorable and unfavorable to the party that is not represented. *See Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir.1981). Finally, there is no indication the appeal referee decided the case without considering evidence offered by Ellison. This case certainly does not rise to the level of the behavior condemned by the Utah Supreme Court in *Bunnell v. Industrial Comm'n*, 740 P.2d 1331 (Utah 1987).

The decision of the Commission is affirmed.

ORME and MURPHY, JJ., concur.