Bernard McGUIRE, Plaintiff,

v.

**DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.**

**No. 880057–CA.**

Court of Appeals of Utah.

Feb. 3, 1989.

John J. Borsos, Salt Lake City, for plaintiff.

Alan Hennebold, Salt Lake City, for defendant.

Before BILLINGS, JACKSON and ORME, JJ.

JACKSON, Judge:

Bernard McGuire challenges a determination by the Board of Review of the Industrial Commission that his private duty nurses are not exempt from unemployment insurance coverage by virtue of Utah Code Ann. § 35–4–22(j)(5)(A–C) (1985).[1] We affirm.

As a result of an accident when still a teenager, McGuire is a quadriplegic who requires around-the-clock care. That care has been provided to him in his apartment (and in his parents' home on weekends) by licensed practical nurses working one or more 24-hour shifts each week. McGuire advertises the availability of these positions, interviews the nurses, hires them, retains the right to fire them, and compensates them for their services at the rate of $8.00 per hour.[2] The nurses regularly perform tasks of a medical nature, such as catheterization, administration of medications, muscle stimulation and physical therapy. Because of McGuire's dependent condition, the nurses also perform other personal services for him, including feeding and dressing him, preparing meals, and doing his laundry, light housekeeping, and driving.

Harriet Vallen was hired by McGuire in December 1984. Like all McGuire's nurses, she signed an independent contractor agreement with him, in which she acknowledged her independent status for purposes of computing federal and state taxes and unemployment insurance. McGuire terminated the relationship with Vallen in March 1986 when she was eight months pregnant because he thought she could not adequately do the required lifting. She filed for unemployment benefits, prompting a Department of Employment Security field audit and investigation of all sums paid to McGuire's nurses from January 1984 through March 1987. Six licensed practical nurses, including Vallen, submitted status questionnaires to the Department. Initially, the Department determined McGuire's father was the responsible employer under the Employment Security Act ("the Act"), but a Department appeal referee ruled adversely to that position. Subsequently, the Department determined the nurses were covered employees for whom McGuire had to make unemployment insurance contributions and reports.[3]

---

1. (5) Services performed by an individual for wages or under any contract of hire, written or oral, express or implied, are deemed to be employment *subject to this act* unless and until it is shown to the satisfaction of the commission that:

    (A) The individual has been and will continue to be free from control or direction over the performance of those services, both under his contract of hire and in fact;

    (B) The service is either outside the usual course of the business for which the service is performed or that the service is performed *outside of all the places of business of the* enterprise for which the service is performed; and

    (C) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the contract of service.

    Utah Code Ann. § 35–4–22(j)(5) (1985). The 1986 amendment of this section, which deleted part (B), has no effect on the resolution of this case.

2. At the time of his accident, McGuire was covered under his father's medical insurance policy, although his lifetime benefits are limited to $1,000,000. As long as the persons providing him care are licensed practical nurses, licensed vocational nurses, or licensed registered nurses, McGuire is reimbursed by the insurance company at this set hourly rate several weeks after claim forms are submitted to document the number of hours worked.

3. Our affirmance is not an endorsement of the Department's inconsistent positions. Had the Department more carefully investigated the facts in the first place, the erroneous initial determination and resulting administrative proceeding concerning McGuire's father would have been avoided. However, we cannot agree with McGuire that the Department was somehow estopped from commencing this proceeding against him.

After a hearing in McGuire's administrative appeal of that decision, the appeal referee concluded that, for purposes of section 35–4–22(j)(5), the nurses' performance of personal services, for which they received an hourly wage under contracts for hire, constituted "employment." Recognizing that the contractual designation of the nurses as independent contractors was not determinative of their status under the Act, *Leach v. Board of Review*, 123 Utah 423, 434, 260 P.2d 744, 750 (1953), he then applied the exclusionary "ABC" test set forth in section 35–4–22(j)(5)(A–C) in order to determine whether the nurses' employment was, nonetheless, excluded from coverage under the Act. Each part of that test must be satisfied in order to exclude an employer from the requirements of the Act. *Nielsen v. Department of Employment Sec.*, 692 P.2d 774, 776 (Utah 1984); *Ellison, Inc. v. Department of Employment Sec.*, 749 P.2d 1280, 1283 (Utah Ct.App.1988). *See Allen & Assocs. v. Industrial Comm'n*, 732 P.2d 508, 509 (Utah 1987). The referee concluded neither part (A) nor part (C) had been met because McGuire controlled and directed the services performed by the nurses and because the evidence did not show any of the nurses pursued an independent nursing business. The Board of Review of the Industrial Commission adopted the referee's findings and conclusions, affirming the order holding McGuire liable for $1,965.89 in unemployment insurance contributions that should have been paid during the audit period.

■ The Industrial Commission's findings regarding basic facts are conclusive if they are supported by the evidence. *Superior Cablevision Installers, Inc. v. Industrial Comm'n*, 688 P.2d 444, 447 (Utah 1984). Its application of the ABC exclusionary test in section 35–4–22(j)(5) to these basic facts involves a mixed question of law and fact, which we review to determine if it falls within the limits of reasonableness or rationality. *Barney v. Department of Employment Sec.*, 681 P.2d 1273, 1275 (Utah 1984); *Ellison, Inc.*, 749 P.2d at 1282.

■ McGuire does not challenge the determination that his relationship with the nurses constituted "employment," instead focusing on the ABC test to argue the nurses were excluded from coverage by the Act. Because the ABC test is conjunctive, we turn first to McGuire's claim that the Industrial Commission unreasonably determined under part (C) that his nurses were not "customarily engaged in an independently established trade, occupation, profession, or business of the same nature" as that involved in their contract with him.

The referee made the following pertinent findings of basic facts. All of the nurses involved in the field audit were licensed in Utah as L.P.N.'s, a precondition of reimbursement to McGuire from his insurance carrier.[4] All signed written agreements with McGuire referring to themselves as independent contractors. While some were employed elsewhere as nurses, none performed private duty nursing services for their own clients other than McGuire during the period of time they worked for him, nor did they seek such work by offering their services to the public. Their contracts required them to perform the nursing services personally; they could not hire replacements or additional help to whom they could pay lower wages than the contract price. Four of the nurses were reported as being wage-earning employees of other businesses or organizations during the periods they worked for McGuire—one was a cemetery salesman; one worked at a hospital; one worked for the Utah Department of Social Services; the fourth worked for a hospital and two home health care providers. The fifth nurse was a health education student in her off-hours, and Vallen worked only for McGuire.

McGuire does not challenge these findings of fact. Instead, he asserts that each nurse's possession of an L.P.N. license conclusively satisfies section 35–4–22(j)(5)(C) because the nurses are *capable* of conducting their own independent businesses or

---

**4.** It is unclear from the record whether reimbursement of any required costs of employing the nurses, such as unemployment contributions, would be reimbursed by the insurer.

professions as private duty nurses, even if they do not in fact do so when not working for him. Echoing Justice Crockett's concurring opinion in *Leach,* 123 Utah at 435–37, 260 P.2d at 750–51, McGuire argues that his liability for unemployment insurance payments should not hinge on what his private duty nurses choose to do or not do with their time when they are not engaged in his service. However, *Leach* and more recent decisions interpreting part C have implicitly rejected such an argument by including possession of a business or professional license as only one of many factors to be considered in determining whether a person is "customarily engaged in an independently established" trade or business. *See, e.g., New Sleep, Inc. v. Department of Employment Sec.,* 703 P.2d 289, 291 (Utah 1985); *Barney,* 681 P.2d at 1275–76. Other relevant indicia include: holding oneself out to the general public as being engaged in a particular business; advertising one's services; having an established clientele; having a place of business; having special training or skills; and having a substantial investment in tools necessary for the work performed. *Ellison, Inc.,* 749 P.2d at 1283–84.

The interpretation of section 35–4–22(j)(5)(C) urged by McGuire would automatically exclude from unemployment insurance coverage all persons in employment covered by the Act who were also license holders of some sort, effectively eviscerating the statutory provision in many cases. But it is well established in this state that part (C) is designed to exclude from unemployment coverage only those workers who have independently established businesses on which they can rely for their livelihood if their employment for one person is terminated. *New Sleep, Inc.,* 703 P.2d at 293. "[T]he 'independently established business' *must exist* independent of the services under consideration in the sense that it is the whole—of which the particular service is a part." *Leach,* 123 Utah at 431, 260 P.2d at 748 (emphasis added). Thus, the appropriate inquiry under part (C) is whether the person engaged

in covered employment actually has such an independent business, occupation, or profession, not whether he or she could have one.

Here, the nurses' training and licenses are the only factors present to support McGuire's claim that they should be treated as independent contractors. They did not hold themselves out to the general public as individual providers of private nursing care. They had no other private nursing clients besides McGuire, nor did they actively solicit any through advertising. They could not hire employees of their own to perform the contracted work, and they had no established places of business. Finally, like the water bed installers in *New Sleep, Inc.,* and the franchise dealers in *Leach,* four of McGuire's six nurses spent the time away from him working as employees in other employment, not in the practice and pursuit of independently established businesses, professions, or occupations as private duty nurses.

In light of the purpose of the statute and all the relevant factors to be considered, the Board of Review reasonably concluded section 35–4–22(j)(5)(C) had not been satisfied.[5] McGuire is, therefore, not exempt from payment of unemployment insurance premiums during the audit period.

The order of the Board of Review is affirmed.

BILLINGS and ORME, JJ., concur.

---

5. Because of this determination, we need not reach McGuire's claim that the Board of Review unreasonably determined he had not satisfied part A of the exclusionary test.